Everett R. SPAULDING, Sr., Personal Representative of the Estate of Russell B. Spaulding, Plaintiff,

v.

The UNITED STATES of America, Defendant.

Civ. No. 85–0009–B.

United States District Court, D. Maine.

Nov. 18, 1985.

Jed Davis, Augusta, Me., for plaintiff.

Paula D. Silsby, Asst. U.S. Atty., Portland, Me., for defendant.

## MEMORANDUM AND ORDER DISMISSING COMPLAINT

CYR, Chief Judge.

Plaintiff brings this action under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b), 2671–2680 (1982), alleging that the Government's negligence caused the death of his son. The Government moves to dismiss for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1).

The court assumes the truth of the following facts alleged in plaintiff's complaint. Plaintiff's decedent, Russell Spaulding, enrolled in a federally sponsored Job Corps training program on October 6, 1981. On May 2, 1982, while still enrolled in the Job Corps, Spaulding was shot and killed by another Job Corps trainee, Alan Roberts. The shooting took place in Waterville, Maine, while both Spaulding and Roberts were on weekend leave from the program. Roberts suffered from severe depression, a personality disorder, and substance abuse. Prior to his enrollment in the Job Corps, Roberts had been found guilty of "criminal threatening" with the same shotgun used to kill Spaulding.

Thus, plaintiff charges that the Government was negligent in enrolling Roberts in the Job Corps, in assigning Roberts to the Penobscot Job Corps Center, and in granting Roberts leave to go to Waterville on the weekend Spaulding was killed. Finally, plaintiff alleges that the Government's negligence was the proximate cause of Spaulding's death. Complaint, ¶¶ 6–13.

The FTCA provides that

subject to the provisions ... of this title, the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... [for] personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office ... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Although the FTCA contains "a broad waiver of the immunity of the United States from suit in tort," 1 Jayson, *Handling Federal Tort Claims*, § 51, at 2–3 (1964), the waiver is subject to several statutory exceptions. *See* 28 U.S.C. § 2680. The Government contends that the court lacks subject matter jurisdiction because the instant action comes within one of the exceptions.[1]

Subsection 2680(h) provides that the FTCA shall not apply to "[a]ny claim arising out of assault, battery, [or nine other intentional torts]." 28 U.S.C. § 2680(h). The Government argues that although plaintiff complains of the negligence of *various* Government employees, essentially he seeks recovery for an assault and battery committed by Roberts, a federal employee.[2] On the other hand, plaintiff states that the complaint "has specifically alleged negligence on the part of the United States Government through its employees," and

therefore should not be barred by subsection 2680(h).

The court is guided by *Shearer v. United States,* —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), which was decided six months after plaintiff filed this action. While off duty, U.S. Army Private Shearer was kidnapped and murdered by another serviceman, Heard, who previously had been convicted and imprisoned for manslaughter while stationed with the U.S. Army in Germany. Upon release from prison, Heard was transferred to the United States; no further action was taken by the Army, although "high ranking military officers, aware of his violent disposition, recommended his discharge." *Shearer v. United States,* 723 F.2d 1102, 1107 (3d Cir.1983), *rev'd,* —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). Shearer's estate sued the Government, charging that the negligent supervision of Heard by the Army was the proximate cause of Shearer's death.

The Third Circuit held that plaintiff's claim was not barred by subsection 2680(h): "In this case, appellant's allegations, if proven, would permit a court to find that the government's negligence proximately caused Shearer's injury, ..." 723 F.2d at 1108. The Third Circuit also held that Shearer's suit was not barred by the *Feres* doctrine.[3]

The Supreme Court reversed. The opinion of Chief Justice Burger addressed both the exclusion under the FTCA and the applicability of the *Feres* doctrine. Although not binding on this court,[4] the opinion con-

1. The Supreme Court has "interpreted the [FTCA] to require clear relinquishment of sovereign immunity to give jurisdiction for tort actions." *Dalehite v. United States,* 346 U.S. 15, 31, 73 S.Ct 956, 965, 97 L.Ed. 1427 (1953). Thus, "any objection raised by the defendant which is based upon the exceptions listed in § 2680 goes to the issue of jurisdiction over the subject matter and hence to Rule 12(b)(1)." *Gibson v. United States,* 457 F.2d 1391, 1392 n. 1 (3d Cir.1972) (citations omitted).

2. Congress expressly stated that "[f]or the purposes of the Federal tort claims provisions in title 28, [Job Corps] enrollees shall be considered employees of the Government." 29 U.S.C. § 1706(a)(3) (1982).

3. In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Court held that members of the armed forces may not recover under the FTCA for injuries which "arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. Thus, for Shearer's estate to have a cause of action against the Government, the Third Circuit had to find that section 2680 did not bar suit *and* that the action was not barred under *Feres.*

4. The Court could have reversed the Third Circuit on either the subsection 2680(h) ground or the *Feres* doctrine. *See* note 3 *supra.* Chief Justice Burger's opinion was joined by Justices White, Rehnquist and O'Connor. *See* —— U.S. at

tains a careful analysis of the language and purpose of the relevant statutory exception. Chief Justice Burger noted that "[s]ection 2680(h) does not merely bar claims *for* assault and battery; in sweeping language it excludes any claim *arising out of* assault or battery." —— U.S. ——, 105 S.Ct. at 3042 (emphasis in original). The legislative history gives no indication that Congress ever intended to permit the Government to be sued on *any* claim arising out of a federal employee's intentional tort, although several courts had permitted such actions prior to *Shearer.*[5] As the Chief Justice noted, "[i]t is clear that Congress passed the [FTCA] on the straightforward assurance that the United States would not be financially responsible for the assaults and batteries of its employees.... No one suggested that liability would attach if the Government negligently failed to supervise such an assailant." *Id.* (citation omitted).

The cases cited by plaintiff, all decided prior to *Shearer,* are not persuasive. Plaintiff relies primarily on *Gibson v. Unit-*

*ed States,* 457 F.2d 1391 (3d Cir.1972), in which a Job Corps instructor, who had been stabbed by a trainee, sued the Government for failing to provide adequate safety measures to protect those who were living and working with Job Corps trainees. *Id.* at 1393. In deciding that the claim was not barred by subsection 2680(h), the court stated that "the attack on Gibson was a foreseeable consequence of the Government's failure to exercise due care *under the circumstances* and, therefore, *it is not such an intervening act as will sever the necessary causal relation between the negligence and the appellant's injuries.*"[6] *Id.* at 1395 (emphasis in original). The court concluded that "the attack was not an intervening act and the tort did not arise out of the assault and battery. It had its roots in the Government's negligence." *Id.* The *Gibson* court did not focus on the language of subsection 2680(h), however, but apparently was concerned with when a third party may be held liable in tort for injuries caused by the criminal conduct of another.[7] *See general-*

---

. —— , 105 S.Ct. at 3041. Justice Brennan's brief concurring opinion, which did not discuss the FTCA but which joined the Chief Justice only in holding that *Feres* barred Shearer's suit, was joined by Justices Blackmun and Stevens. *See id.* at —— , 105 S.Ct. at 3044 (Brennan, J., concurring in part and concurring in the judgment). Justice Marshall concurred in the judgment, based on *Feres, see id.* (Marshall, J., concurring in the judgment) and Justice Powell did not take part in the decision. Thus only four of the eight justices in *Shearer* even discussed the applicability of subsection 2680(h) to a claim alleging negligent Government supervision as the proximate cause of injuries suffered by the victim of an assailant who was a federal employee.

5. For example, in *Gale v. United States,* 491 F.Supp. 574 (D.S.C.1980), the court distinguished claims arising out of assault and battery, where the Government's liability is based solely on *respondeat superior,* from similar claims where liability is based on negligent supervision, holding that subsection 2680(h) did not bar claims based on alleged negligent Government supervision. *Id.* at 575. However, the court later vacated this ruling, following the lead of *Hughes v. United States,* 662 F.2d 219 (4th Cir.1981), which "accepted the majority rule in refusing to allow an action against the government where the assailant is a government employee." *Gale,* 525 F.Supp. 260, 261 (D.S.C.

1981). In *Loritts v. United States,* 489 F.Supp. 1030 (D.Mass.1980), the court held that subsection 2680(h) did not bar the federal tort claim of a member of a choral group who was raped by a cadet while visiting West Point. Noting that the Academy volunteered to provide escorts to members of the choral group, the court held that the failure to do so was negligence which could not be avoided by recourse to subsection 2680(h). *Id.* at 1031, 1032 [citing *Gibson,* discussed *infra* ]. *See generally* 2 Jayson, *Handling Federal Tort Claims,* §§ 260.01, 260.02 (rev'd 1984) [collecting cases]; 5 K. Davis, *Administrative Law Treatise,* § 27:17, at 92–94 (2d ed. 1984) [discussing the assault and battery exception to the FTCA].

6. In *Gibson,* as here, the court was considering defendant's motion to dismiss, and therefore was assuming as true the facts alleged by plaintiff. *See* 457 F.2d at 1393. Ultimately, the Third Circuit held that the Government was not liable. *See Gibson v. United States,* 567 F.2d 1237 (3d Cir.1977) [holding that the United States, on the facts of the case, was neither liable for the actions of an independent contractor nor directly negligent in its actions].

7. The cases cited by the *Gibson* court, *Lillie v. Thompson,* 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73 (1947), and *Harrison v. Missouri Pacific Rail-*

*ly* W. Prosser, *The Law Of Torts*, § 54 at 344–46 (3d ed. 1964) [discussing when a duty arises to control the conduct of others]. However, there is no support for the *sub silentio* assumption of the *Gibson* court that Congress intended that the Government would be liable under the FTCA in situations where a private party would be liable for a third party's intentional tort. Reading the FTCA in this manner ignores the "arising out of" language, and would effectively exclude only claims *for* assault and battery. The Third Circuit's attempt at reasoning around the "arising out of" language is particularly unconvincing in light of *Shearer*.[8]

The *Gibson* court further suggested that subsection 2680(h) might not apply because the plaintiff had alleged that the assailant was under the influence of narcotics, and therefore that *"the requisite mental element* necessary for the battery may well be absent."* 457 F.2d at 1396 (emphasis in original). Plaintiff raises the same argument in the present case, noting that Roberts was found "not guilty" of Spaulding's murder "by reason of insanity."[9] Plaintiff suggests that "[t]he relationship of Roberts' mental disorder to the element of intent, and the specific reason why a jury found him to be insane at the moment of the act, create unanswered factual questions which must be submitted to the trier of fact...." Memorandum in Support of Plaintiff's Objection to Defendant's Motion to Dismiss, at 10.

Although at least one other district court has taken the approach recommended by plaintiff, *see Moffitt v. United States*, 430 F.Supp. 34, 38 (E.D.Tenn.1976) [following

*Gibson,* court holds that factual issues must be resolved by proof before the court can determine whether subsection 2680(h) applies], that approach is inconsistent with controlling precedent and the history of the FTCA.

■ The determination of whether subsection 2680(h) applies to a given case is an essential prerequisite to the valid exercise of the district court's jurisdiction. *See* note 1, *supra.* Thus, "whether this claim is outside the intended scope of the Federal Tort Claims Act ... depends solely upon what Congress meant by the language it used in § 2680(h)." *United States v. Neustadt,* 366 U.S. 696, 706, 81 S.Ct. 1294, 1300, 6 L.Ed.2d 614 (1961). *Neustadt* distinguishes between the law to be applied in construing subsection 2680(h), which is the law according to "established tort definitions ... in 1946," *id.* at 707, 81 S.Ct. at 1301, and the law to be applied in the event the suit is not barred by subsection 2680(h), which would be the substantive tort law as determined "in accordance with the law of the place where the act or omission occurred," *id.* at 706 n. 15, 81 S.Ct. at 1300 n. 15, *quoting* 28 U.S.C. § 1346(b). As the Fourth Circuit has noted, "where the United States excepts itself from certain liabilities, as in Section 2680 of the [FTCA], such exceptions must be interpreted under the general law rather than under some peculiar interpretation of a State or Territory." *Stepp v. United States,* 207 F.2d 909, 911 (4th Cir.1953).

■ The narrow question before the court, then, is whether an injury inflicted by an insane person is outside the definitions of assault and battery contemplated

---

road Co., 372 U.S. 248, 83 S.Ct. 690, 9 L.Ed.2d 711 (1963), involved claims brought by railroad employees for injuries arising out of an assault by a third person. In both cases the Court vacated summary judgment for the employer, holding that railroads might be liable where the assault was foreseeable and the railroad breached its duty of reasonable care. The actions were brought under the Federal Employers' Liability Act [FELA], 45 U.S.C. §§ 51–60, which renders employers liable for injuries to employees "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." *Id.* § 51. Unlike

the FTCA, the FELA *does not* exclude injuries "arising out of" the intentional torts of its employees.

**8.** Although Chief Justice Burger's opinion did not cite or discuss *Gibson,* the Third Circuit's decision in *Shearer,* which was overturned by the Supreme Court, expressly relied on the holding of *Gibson. See Shearer,* 723 F.2d at 1108.

**9.** *State v. Roberts,* Cr. No. 83–577 (Kennebec Cty.Sup.Ct. Feb. 28, 1984).

by Congress at the time of the enactment of subsection 2680(h) of the FTCA.[10] The general rule is that "an insane or other mentally disordered person is civilly liable for injuries resulting from an assault or battery committed by him." Annot., 77 ALR2d 625, 626 (1961) [collecting cases]. Most cases have held insane persons civilly liable for assault and battery, without discussing the extent or type of mental impairment or its effect on the ability of the assailant to form the necessary intent. *See id.* at 627. This general rule is of long standing, *see* Prosser, *supra*, § 129 at 1028–29. It is only some of the more recent cases which hold that the assailant's affliction may be such "that he is incapable of entertaining the specific intent necessary for a particular tort...." *Id.* at 1029; *see, e.g., Mullen v. Bruce*, 168 Cal.App.2d 494, 335 P.2d 945 (1959). Given the prevailing case law, both in 1946 and now, it seems extremely unlikely that Congress contemplated that the subsection 2680(h) exception would be avoidable on so amorphous a basis as the assailant's precise mental state at the moment of the commission of the tort.

Furthermore, allowing this question to be determined by the finder of fact, as plaintiff urges, may entangle courts in the very issues Congress sought to eliminate by its enactment of subsection 2680(h). One of the first commentaries on the statutory exception of subsection 2680(h) suggested that it would be dangerous to subject the Government to liability arising from intentional torts, "a type of tort which would be difficult to make a defense against, and which are (sic) easily exaggerated." 2 Jayson, *Handling Federal Tort Claims*, § 260.01 n. 1.1, *quoting Hearings Before a Subcommittee of the Committee on the Judiciary*, 76th Cong. 3d Sess. 39 (March 6, 11, 1940) (Statement of Alexander Holtzoff, Dept. of Justice).

█ The position urged by plaintiff would involve the court in the abstruse exercise of attempting to determine whether an assailant, found insane by a state court, had the mental capacity to form the requisite intent to commit an assault or battery under federal law. As the Supreme Court has noted, "[t]here is nothing in the [FTCA] which shows that Congress intended to draw distinctions so finespun and capricious as to be almost incapable of being held in the mind for adequate formulation." *Neustadt*, 366 U.S. at 708, 81 S.Ct. at 1301, *quoting Indian Towing Co. v. United States*, 350 U.S. 61, 68, 76 S.Ct, 122, 126, 100 L.Ed. 48 (1955). As in *Shearer*, "no semantical recasting of events can alter the fact that the battery was the immediate cause of ... death and, consequently, the basis of [plaintiff's] claim." — U.S. ——, 105 S.Ct. at 3042..

Accordingly, the court holds that a party presenting a claim arising out of an assault and battery may not avoid the subsection 2680(h) statutory exclusion for intentional torts by establishing that the assailant lacked the mental capacity to form the requisite intent, even where, as here, the assailant was found not guilty of the criminal assault charge by reason of insanity.

Defendant's rule 12(b)(1) motion to dismiss is GRANTED.

SO ORDERED.

---

10. In contrast, the *Moffit* court treated the issue of intent as a matter of state law, without any discussion of whether state or federal law should apply. *See* 430 F.Supp. at 37–38. Although the distinction is fairly well drawn in *Neustadt,* courts have not always recognized that the question of whether an exclusion applies must be determined as a matter of federal law; instead they have looked to state law to determine whether the elements of a tort are present in a given case. *See, e.g., Lambertson v. United States,* 528 F.2d 441, 444 (2d Cir.1976) [looking to state law to determine the elements of a battery]; *see generally* 2 Jayson, *Handling Federal Tort Claims,* § 241 (rev'd 1982) and cases cited therein.