Shelly HIPWELL, an individual by and through her guardians, Sherrie JENSEN and Shayne Hipwell, Plaintiffs and Appellees,

v.

Roger SHARP, Tim W. Healy, and Does I through X, Defendants and Appellants.

No. 920218.

Supreme Court of Utah.

Aug. 11, 1993.

Rehearing Denied Sept. 23, 1993.

Richard D. Burbidge, Stephen B. Mitchell, Gary R. Johnson, Salt Lake City, and Simon H. Forgette, Kirkland, WA, for plaintiffs.

Glenn C. Hanni, David R. Nielson, Salt Lake City, for Sharp.

Thomas L. Kay, Mark O. Morris, Paul D. Newman, Salt Lake City, for Healy.

Intervenor R. Paul Van Dam, Atty. Gen., Debra J. Moore, Asst. Atty. Gen., for State.

HALL, Chief Justice:

Defendants Roger Sharp and Tim Healy filed this interlocutory appeal after the trial court denied their motions for summary judgment. We affirm the trial court's denial of defendants' motions and remand for further proceedings consistent with this opinion.

## I. FACTS

"[I]n reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[1] We state the facts here accordingly.

This is a legal malpractice action filed on behalf of Shelly Hipwell ("Hipwell") by her guardians Sherrie Jensen and Shayne Hipwell. Hipwell's guardians brought suit against her former attorneys for allegedly failing to adequately research and investigate her medical malpractice claim against the University of Utah Medical Center before settling that claim for $250,000.

Hipwell's ordeal began on December 13, 1988, when the twenty-six-year-old was admitted to McKay–Dee Medical Center in Ogden, Utah, suffering from complications in connection with her pregnancy. She was transferred to the University Hospital (the "Hospital") in Salt Lake City for further

1. *Higgins v. Salt Lake County,* 855 P.2d 231, 233 (Utah 1993); *Smith v. Batchelor,* 832 P.2d 467, 468 (Utah 1992).

treatment on December 23, 1988. On January 18, 1989, a resident physician punctured and lacerated Hipwell's heart while attempting to perform a bone marrow biopsy. The error caused her to become comatose and suffer severe brain damage, rendering her totally and permanently disabled. She died on May 27, 1992, after this suit was filed.

On February 10, 1989, Hipwell's guardians retained defendants to represent Hipwell's interests in a medical malpractice action. Approximately three months later, defendants advised Hipwell's guardians to enter into a settlement agreement with the University Medical Center, releasing it from all claims that Hipwell may have had against the Hospital or its employees. No lawsuit was ever filed on Hipwell's behalf, and no doctors or other employees who were present when the allegedly negligent procedure was performed were interviewed by defendants before the claim was settled.

In the complaint in this action, Hipwell's guardians alleged that defendants breached the duty of care owed to her by failing to adequately research and investigate the relevant facts and law before settling her malpractice claim for an amount far less than her actual damages. Specifically, she claimed that defendants advised settlement without taking into consideration our decision in *Condemarin v. University Hospital*,[2] which was decided six days before the settlement agreement was finalized.

In *Condemarin*, we declared that the $250,000 damage recovery limit (the "cap") in the Utah Governmental Immunity Act (the "Act") was unconstitutional as applied to the Hospital.[3] Hipwell's guardians allege, among other things, that the case was worth far more than $250,000 and that encouraging settlement for that amount when the cap did not apply to the Hospital constituted legal malpractice.

Defendants moved for summary judgment, claiming that *Condemarin's* invali-

dation of the cap was incorrect or, alternatively, that a 1987 amendment to the Act remedied any constitutional infirmity that the cap presented in *Condemarin*. Hence, defendants alleged, settling Hipwell's malpractice claim for the maximum amount permitted under section 63–30–34(1) of the Act was reasonable as a matter of law. The trial court denied defendants' motions, and this interlocutory appeal followed.

On appeal, defendants ask us to reexamine our holding in *Condemarin* regarding the constitutionality of the cap. They again claim that if we find that *Condemarin* was flawed or that the 1987 amendment remedied the Act's constitutional deficiency, then their decision to settle cannot be negligent and summary judgment in their favor should be granted.

The parties have presented interesting arguments concerning the continuing viability of our decision in *Condemarin*. However, this case does not present the situation in which those arguments can be addressed. The sufficiency of the professional advice rendered by defendants must be judged based on the law as it existed when such advice was actually given.

## II. GOVERNING LAW

■ Defendants ask this court to rule that *Condemarin's* holding as to the Hospital's liability is incorrect and then retroactively apply a decision addressing *Condemarin* to protect them from a negligence claim arising from their representation of Hipwell in 1989. This court had just decided *Condemarin* when defendants recommended that Hipwell's guardians settle the claim against all potential defendants associated with the Hospital.

*Condemarin* held that the cap, which limited the amount injured plaintiffs could recover from the Hospital for the negligent acts of hospital employees, violated article I, section 11 of the Utah Constitution and was unconstitutional.[4] Hence, under the

---

**2.** 775 P.2d 348 (Utah 1989).

**3.** *Id.* at 366. The damage recovery limit provision is located at Utah Code Ann. § 63–30–34(1).

**4.** *Condemarin*, 775 P.2d at 366. A majority of the court agreed that because the open courts clause was implicated, the cap must be analyzed under a heightened level of scrutiny for consti-

law existing at the time, Hipwell's recovery against the Hospital, where she was a patient, was *not* limited to $250,000.[5]

■ It is well settled that an evaluation of the reasonableness of an attorney's services must be based on the law as it existed at the time such services were rendered, not after a subsequent legal malpractice action is filed.[6] As the Supreme Court of California stated in a legal malpractice action:

> We cannot, however, evaluate the quality of defendant's professional services on the basis of the law as it appears today. In determining whether defendant exhibited the requisite degree of competence in his handling of plaintiff's divorce action, the crucial inquiry is whether his advice was so legally deficient *when it was given....*[7]

Therefore, the reasonableness of defendants' decision to recommend settlement against all potential defendants in Hipwell's medical malpractice claim is governed by *Condemarin*, which was the applicable law at the time.

The defendants challenge *Condemarin*'s premise that both the state (and therefore the state-owned Hospital) and municipal corporations were subject to suit at common law when exercising proprietary functions.[8] Defendants assert that at common law the state was actually completely immune from suit regardless of whether it was engaged in a governmental or a proprietary function. Therefore, the argument continues, a legislative limitation on the amount of recovery against the state does not abrogate a common law right, and the open courts clause is not implicated. The common law distinction between the state and municipal corporations was not raised by the parties in *Condemarin* and thus was not addressed by the court in that case.

In any event, the merits of defendants' argument need not be addressed at this time. Even if we were to revisit *Condemarin* now, any change we might make could not be utilized by defendants. The "serendipity defense," in which an attorney attempts to use case law decided after he or she rendered allegedly negligent advice to fend off a malpractice claim, has been rejected.[9] Therefore, whether this court chooses to reevaluate a case long after the alleged negligent advice was given can have no effect on the present malpractice suit against defendants.

Defendants also claim that the 1987 amendment to section 63–30–2 of the Act, which was *not* discussed specifically by the *Condemarin* court, remedied the Act's constitutional deficiency and reinstated the cap as to the Hospital.[10] Defendants claim that

---

tutional purposes. However, the court disagreed as to whether the correct constitutional analysis should be under the state equal protection or due process doctrine. *Id.* at 352–66 (Durham, J.); *id.* at 366 (Zimmerman, J., concurring); *id.* at 369 (Stewart, J., concurring).

**5.** Defendants claim that *Condemarin*, which was limited to the Hospital, does not apply to the facts of this case because the allegedly negligent physician was employed by the college of medicine, not by the Hospital. Whether the Hospital was sufficiently involved in Hipwell's injury such that *Condemarin* applies should be determined on remand.

**6.** *Smith v. Lewis,* 13 Cal.3d 349, 118 Cal.Rptr. 621, 625, 530 P.2d 589, 593 (1975), *overruled on other grounds by In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 641, 544 P.2d 561, 569 (1976); *Gruse v. Belline,* 138 Ill.App.3d 689, 93 Ill.Dec. 297, 302, 486 N.E.2d 398, 403 (1985); *Martin v. Northwest Washington Legal Servs.,* 43 Wash.App. 405, 717 P.2d 779, 782 (1986); *see*

*also McCafferty v. Musat,* 817 P.2d 1039, 1043 (Colo.Ct.App.1990); *Walker v. Bangs,* 92 Wash.2d 854, 601 P.2d 1279, 1283 (1979). *See generally* 1 Roland E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 14.11 (3d ed. 1989).

**7.** *Smith,* 530 P.2d at 593 (emphasis added).

**8.** *Condemarin,* 775 P.2d at 349–51.

**9.** *See Aloy v. Mash,* 38 Cal.3d 413, 212 Cal.Rptr. 162, 166–68, 696 P.2d 656, 661–62 (1985) (court rejected attorney's argument that he was not negligent because the claim he failed to assert in 1971 "luckily turned out to be worthless in 1981," when he was sued for malpractice).

**10.** In 1987, the legislature added subsection 63–30–2(4), which states in pertinent part:

> (a) "Governmental function" means any act, failure to act, operation, function, or undertaking of a governmental entity whether or

subsection 63–30–2(4) reimposed governmental immunity for the Hospital by obliterating the distinction between "governmental" and "non-governmental" and "essential" and "non-essential" that *Condemarin* relied on in determining that the Hospital does not qualify for immunity under the Act. The 1987 amendment, defendants point out, was in place when the decision to settle Hipwell's case was made.

The constitutional status of subsection 63–30–2(4) was not at issue in *Condemarin*. However, changing the language of that section cannot by itself remedy the Act's constitutional deficiency as set forth in *Condemarin*.[11] Moreover, there is no indication in the record in this case that defendants were aware of the amendment or relied on it when they made the decision to settle. On the contrary, defendants' testimony to the probate court when receiving approval for the settlement on Hipwell's behalf reveals that they actually were aware of the *Condemarin* decision striking the cap and considered it to be the applicable law. Nonetheless, defendants advised settlement against all prospective medical malpractice defendants for the amount available under the cap. Therefore, the 1987 amendment does not protect defendants from the legal malpractice claim.

To summarize, we hold that any assessment of the reasonableness of defendants' advice to Hipwell's guardians must be based on the law as it existed at the time such advice was rendered. Even if we were to review *Condemarin*, any decision made today concerning that case could not be applied retroactively to protect defendants from a malpractice claim arising from a decision made over four years ago.[12]

We affirm the trial court's denial of defendants' motions for summary judgment

not the act, failure to act, operation, function, or undertaking is characterized as governmental, proprietary, a core governmental function, unique to government, undertaken in a dual capacity, essential to or not essential to a government or governmental function, or could be performed by private enterprise or private persons.

and remand for further proceedings consistent with this opinion.

STEWART, DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Associate C.J., concurs in the result.

**11.** See *Condemarin*, 775 P.2d at 372, where Justice Stewart states, "In any event, the statute cannot resolve a constitutional issue."

**12.** Defendants moved to strike Hipwell's reply brief filed on appeal. Because we have resolved the issues contained in the brief on other grounds, we need not rule on the motion to strike.