Clare N. WRIGHT, Plaintiff
and Appellant,

v.

UNIVERSITY OF UTAH and the State
of Utah, Defendants and Appellees.

No. 930217–CA.

Court of Appeals of Utah.

May 6, 1994.

David R. Olsen (argued) and Paul M. Simmons, Suitter Axland Armstrong & Hanson, Salt Lake City, for appellant.

Jan Graham, State Atty. Gen., Debra J. Moore, and Elizabeth King, Asst. Attys. Gen., (argued), Salt Lake City, for appellees.

Before BENCH, BILLINGS, and DAVIS, JJ.

## OPINION

DAVIS, Judge:

Plaintiff Clare N. Wright appeals from the dismissal of her complaint against the University of Utah and the State of Utah (University). We affirm.

## I. FACTS

On October 26, 1990, Wright filed a complaint against the University· alleging that she had been "assaulted and struck" by a

University employee, and that she had suffered injuries as a result. The complaint asserted that the University was liable for the acts of its employee under a respondeat superior theory or as the result of negligent hiring and supervision of the employee. The only fact pleaded to support her claim against the University was that the employee "had a known propensity for violence."

Instead of answering the complaint, on November 13, 1990, the University filed a "Motion for Judgment on the Pleadings" pursuant to Utah Rule of Civil Procedure 12(c). In support of its motion, the University claimed that it was immune from suit under section 63–30–10(2) [1] of the Utah Governmental Immunity Act (the Act), which immunizes government entities from suit for injuries arising out of an assault or battery.[2]

In response to the University's motion, Wright filed a memorandum arguing that the assault exception to the general waiver of immunity for negligent acts of government employees in section 63–30–10(2) does not apply because (1) her injury arose not out of an assault, but out of the University's negligent hiring and supervision of the employee, (2) the assault was not committed in the course of a core government activity, and (3) the employee who struck her may not have been able to form the requisite mental intent to commit an assault.[3] Wright also claimed that if the Act did bar her action, it was unconstitutional as applied to her and on its face.

After oral argument on July 10, 1992, the trial court granted the University's motion and dismissed Wright's action with prejudice. The trial court's order of dismissal was entered on October 2, 1992. This appeal followed. On appeal, Wright reiterates and expands the arguments she raised in opposition to the motion for judgment on the pleadings. We address each of Wright's assertions in turn.

## II. STANDARD OF REVIEW

■ Both parties addressed the University's motion as one for judgment on the pleadings pursuant to Utah Rule of Civil Procedure 12(c). However, that section by its terms applies only to a judgment on pleadings "[a]fter the pleadings are closed." Utah R.Civ.P. 12(c). Here, the University never filed an answer and instead challenged the sufficiency of the complaint. Thus, the proper procedure for analyzing the trial court's ruling lies under Utah R.Civ.P. 12(b)(6). *See Geltman v. Verity,* 716 F.Supp. 491, 492 (D.Colo.1989) (ruling that motion for judgment on pleadings filed before answer is treated as motion to dismiss).

■ When reviewing a dismissal based on Rule 12(b)(6), "an appellate court must accept the material allegations of the complaint as true, and the trial court's ruling should be affirmed only if it clearly appears the complainant can prove no set of facts in support of his or her claims." *Hansen v. Department of Fin. Inst.,* 858 P.2d 184, 185–86 (Utah App.1993) (citing *Anderson v. Dean Witter Reynolds, Inc.,* 841 P.2d 742, 744 (Utah App. 1992), *cert. denied,* 853 P.2d 897 (Utah 1993)). The propriety of a Rule 12(b)(6) dismissal is a question of law that we review for correctness, giving no particular deference to the lower court's determination. *St. Benedict's Dev. Co. v. St. Benedict's Hosp.,* 811 P.2d

---

1. Utah Code Ann. § 63–30–10(2) (1993) was formerly codified as section 63–30–10(1)(b). No substantive changes to the section were made by the 1990 amendment.

2. Section 63–30–10 states, in pertinent part:

 Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury arises out of:

 . . . .

 (2) assault, battery, false imprisonment, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, or violation of civil rights.

3. Wright's claim that the employee who struck her could not form the requisite mental intent for an assault (and therefore, her injury did not arise out of an intentional assault or battery under § 63–30–10(2)) was based on the assertion in her memorandum in response to the motion for judgment on the pleadings and at the hearing on the motion that the employee was autistic and appeared to be in a trance at the time he attacked Wright. This assertion was not included in the complaint.

194, 196 (Utah 1991); *Hansen*, 858 P.2d at 186.

### III. APPLICATION OF UTAH GOVERNMENTAL IMMUNITY ACT

 Wright's first claim on appeal is that her lawsuit is not barred by Utah Code Ann. § 63–30–10(2) (1993) because her injuries did not arise out of an assault and battery. Instead, she alleges that her injuries arose out of the University's negligent hiring and supervision of an employee with a known propensity for violence.

After Wright made this assertion in her brief on appeal, the Utah Supreme Court issued its opinion in *Ledfors v. Emery County School District*, 849 P.2d 1162 (Utah 1993). In *Ledfors*, the plaintiffs sued the defendant school district for injuries their son suffered when two fellow students assaulted him. *Id.* at 1162. The defendant moved for summary judgment, claiming that it was immune from suit under section 63–30–10(2).[4] In affirming the trial court's grant of summary judgment for the defendant, the supreme court rejected the plaintiffs' assertion that the injury arose from the defendant's failure to supervise rather than from a battery. *Id.* at 1166. In so holding, the court stated that "section 63–30–10 focuses on the conduct or situation out of which the injury arose, not on the theory of liability crafted by the plaintiff or the type of negligence alleged." *Id.* The court also noted that it had "rejected claims that have reflected attempts to evade [the section 63–30–10] statutory categories by recharacterizing the supposed cause of the injury." *Id.*

*Ledfors* is controlling here and effectively bars Wright's assertion that her injuries arose from the University's alleged negligent hiring and supervision of the employee who struck her instead of from an assault or battery. *See also S.H. v. State*, 865 P.2d 1363, 1365 (Utah 1993) (holding that plaintiffs could not frame claim against state on the

basis of negligent hiring, retention and supervision in order to avoid dismissal pursuant to section 63–30–10(2)); *Maddocks v. Salt Lake City Corp.*, 740 P.2d 1337, 1340 (Utah 1987) (holding that plaintiff could not avoid dismissal under section 63–30–10(2) by framing claim on the basis of negligence); *accord Malcolm v. State*, 878 P.2d 1144 (Utah 1994).

 Next, Wright argues the exception in section 63–30–10(2) applies only to assaults and batteries actually committed in the course of governmental, as opposed to nongovernmental, activities. Wright claims that "an attack by a noneducational employee at a public university" does not qualify for immunity under that section.

Wright's assertion misconstrues section 63–30–10 and reads a distinction into the Act that does not exist. Section 63–30–10(2) does not require that the person committing an assault and battery must be engaged in a governmental function in order for a government entity to qualify for immunity under that section. The Utah Supreme Court has, on several occasions, found a government entity immune from suit under section 63–30–10(2) when the person who committed the assault and battery was not even a government employee, much less personally involved in a governmental activity. *Malcolm*, 878 P.2d at 1145–46 (assault by parolee); *S.H.*, 865 P.2d at 1365 (assault by non-employee cab driver); *Higgins v. Salt Lake County*, 855 P.2d 231, 240 (Utah 1993) (assault and battery by mental patient); *Ledfors*, 849 P.2d at 1166 (battery by school students). The Act specifies only that a court examine generally whether the activity that the government entity performs is a governmental function under section 63–30–3.[5] *Ledfors*, 849 P.2d at 1164.

Moreover, Wright would have us determine that although a government entity may be performing a governmental function, assaults by most of its support employees do not qualify for immunity even though those

---

4. Then codified as Utah Code Ann. § 63–30–10(1)(b).

5. Section 63–30–3(1) states, in pertinent part: "Except as may be otherwise provided in this chapter, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function."

employees play an integral part in the functioning of the entity. We decline to accept this reading of the Act.[6]

■ Wright's next claim on appeal is that the assault and battery provision in section 63–30–10(2) does not preclude recovery because the employee's attack on her may have been unintentional due to the employee's questionable mental condition at the time of the assault. Wright notes that assault and battery are intentional torts. Therefore, the argument continues, if the employee was unable to form the requisite intent for assault or battery, he cannot be said to have committed the same, and section 63–30–10(2) does not apply.

We need not address this issue because Wright's argument on this point cannot be squared with the allegations in her complaint. She did not allege that the employee unintentionally struck her—she stated that the employee "assaulted *and* struck her." (Emphasis added.) By our reading, and the trial court's, "assaulted and struck" expresses an intentional hitting. In her memorandum and at oral argument on the motion for judgment on the pleadings, Wright claimed, but did not allege in her complaint, that the employee was autistic and may have been in a trance when he attacked her. However, she never amended her complaint to reflect that approach or to allege anything but an intentional hitting. Although we accept the allegations in the complaint as true and affirm dismissal only if no set of facts exists to support the complaint, we cannot add facts or causes of action to the complaint that do not exist and that Wright has consistently declined to include.

■ Wright argues that under Utah's liberal rules of pleading, her claim that she was "assaulted and struck" should be construed broadly, especially where the State was on notice from Wright's response to its motion for judgment on the pleadings that she was attempting to assert an unintentional hitting. While it is true that Utah has adopted liberal notice pleading requirements, *see, e.g.,*

*Williams v. State Farm Ins. Co.,* 656 P.2d 966, 971 (Utah 1982), those requirements cannot be applied in a vacuum. The proper focus for a Rule 12(b)(6) motion is not on whether one party was on notice of unsubstantiated allegations that go well beyond the pleadings, but on what can be reasonably inferred from the pleadings themselves. *See Olson v. Park–Craig–Olson, Inc.,* 815 P.2d 1356, 1360 (Utah App.1991) (under Rule 12(b)(6), court looks at facts as pleaded to determine if party is entitled to relief); *see also Colman v. State Land Bd.,* 795 P.2d 622, 624 (Utah 1990) (in appeal of dismissal under Rule 12(b)(6), court looks only to material allegations of complaint and not to evidence presented at preliminary injunction hearing). Here we can infer from the pleadings only that an intentional hitting took place.

In her dissenting opinion, Judge Billings claims that by alleging that the employee assaulted and struck her, Wright has created a reasonable inference of "both an intentional tort and a negligent striking." *See* dissenting opinion at 390. She believes "assault *and* struck" should be read in the disjunctive even though the language clearly appears in the complaint in the conjunctive. In support of her view, Judge Billings cites *Soter's Inc. v. Deseret Federal Savings & Loan,* 857 P.2d 935, 941 (Utah 1993) and *California First Bank v. State,* 111 N.M. 64, 72, 801 P.2d 646, 654 (1990). *See* dissenting opinion at 390. Although both cases cited by Judge Billings do conclude that use of the word "and" is redundant, those cases were interpreting jury instructions, *see Soter's,* 857 P.2d at 941, and a statute, *see California First Bank,* 111 N.M. 64, 801 P.2d at 653–54. Judge Billings cites no case where an appellate court has interpreted "and" in a complaint to actually mean "or." When divining the meaning of jury instructions and statutes, it is reasonable to interpret terms so that the language used makes sense when taken as a whole. However, we owe no such deference to the drafter of a complaint, and must take the pleading at face value. In short, Judge Billings interprets "assaulted and struck" as meaning "assaulted *or* unintentionally

---

**6.** Wright also challenges the trial court's determination that a public university performs a governmental function. We address this assertion in

our discussion of the constitutionality of the Act as applied to Wright, *infra* section IV.

struck," while we, and the trial court, believe the language used by Wright is more synonymous with the intentional torts of "assault *and* battery."

Wright claims that even if we determine that her complaint alleges an assault, we should nonetheless conclude that the trial court erred by failing to provide her the opportunity to amend her complaint to allege an unintentional hitting. This claim fails because Wright never attempted to amend her complaint, and instead stood by her allegations as originally pleaded even in the face of potential dismissal.

■ Wright asserts that she did seek leave to amend in a footnote on page twenty of her memorandum filed in response to the motion for judgment on the pleadings.[7] However, Wright did not need the court's permission to amend her complaint. No responsive pleading had been filed by the University. *See Heritage Bank & Trust v. Landon*, 770 P.2d 1009, 1010 (Utah App.1989) (motion to dismiss not responsive pleading under Rule 15(a)). Therefore, pursuant to Utah R.Civ.P. 15(a), Wright could have amended her pleading "once as a matter of course at any time before a responsive pleading [was] served."

■ Moreover, even if Wright did need leave of court to file an amended complaint, requesting to do so in a footnote buried on page twenty of a lengthy memorandum does not comply with our local rule governing motion practice. Utah Code Jud.Admin. R4–501 requires that a motion and supporting memorandum be filed and then submitted for determination by the court. Wright never filed a motion for leave to amend her complaint or tendered an amended complaint in the two-year period from when she filed her complaint in October of 1990 until the order of dismissal was signed in October of 1992 (some ninety days *after* the hearing on the motion). Therefore, the trial court did not err by failing to address Wright's alleged "request" to amend. *See Hein's Turkey Hatcheries, Inc. v. Nephi Processing Plant, Inc.*, 24 Utah 2d 271, 470 P.2d 257, 257 (1970) (trial court properly refused to grant motion for leave to file amended answer where defendant never called for hearing on motion or presented actual amended answer until trial).[8]

In effect, Wright is trying to have it both ways. She elected to stand on her allegations as pleaded, and now, after the trial court correctly granted dismissal due to her failure to state a claim for which relief can be granted, she seeks, before this court, permission to amend her complaint now that a different course of proceeding has been revealed to her.[9] Permitting Wright to pro-

---

7. In that footnote Wright states, in part:

 The plaintiff believes that her allegations, construed broadly so as to do substantial justice, are sufficient to permit an inference that the attack on her was not an assault because the employee who struck her lacked the requisite intent. But if the court disagrees, she respectfully requests leave to amend her complaint to correct this deficiency.

8. Wright failed to amend even after the University, at oral argument on the motion, objected to her use of facts concerning the attacker's mental state that were outside of the pleadings. Counsel pointed out that Wright had made no effort to amend:

 Counsel for the University: [I]f the plaintiff believes in her heart that [the employee] didn't have the intent, then what is plaintiff doing alleging an assault claim? She can't have it both ways.... She's come out of the chutes alleging assault and struck.... *This is a proceeding where all we're trying to do is take the pleadings at face value and decide whether or not a claim is stated. There's been no effort to amend, no effort to retract.*
 (Emphasis added.)
 Later in the proceeding, the following colloquy took place:
 Counsel for the University: I submit that the references to [the employee's autistic, trancelike behavior], [sic] this is a motion to dismiss, and we're trying to decide the case on the pleadings.
 The Court: I'm aware none of that's in the pleadings.
 The record reveals that even having been placed on notice at the hearing on the motion that any information about the employee's mental state was beyond the pleadings, Wright *still* did not amend her complaint during the approximately thirty-five days that elapsed between the hearing and the time the trial court actually issued its decision on the matter.

9. This is especially true now that we have determined, infra, that Wright's constitutional challenge fails, in part, because she never joined the employee as a party to this action. If we permit

ceed again after she neither amended her complaint as a matter of right nor properly sought leave to do so would render Rule 12(b)(6) meaningless and restrict trial courts seeking to dispose of motions brought under that rule. This we cannot do.[10]

Finally, the fact that the University became aware of Wright's various alternate theories during the proceedings on the University's motion does not relieve her of her obligation to state a claim in her complaint, especially where she had. approximately two years in which to amend her complaint before judgment was entered. In fact, Wright was the one who was on notice that a problem existed with her allegations as pleaded. Moreover, she was the one obliged to state a claim for which relief could be granted. *See Hal Taylor Assocs. v. Unionamerica, Inc.*, 657 P.2d 743, 748 (Utah 1982) (trial court correctly found that party waived defense of lack of capacity where it had ample opportunity to amend pleading to give notice of defense but chose not to). In sum, because Wright neither tendered an amended complaint nor properly moved the court for leave to file the same, we reject her argument on this point.

■ The University argues, and we agree, that even if Wright did amend her complaint to allege that the employee lacked the requisite intent for assault or battery, such amendment would be a fruitless, albeit creative, attempt to circumvent the clear language of section 63–30–10. Although no Utah cases have addressed this issue directly, federal courts have done so in suits involv-

ing the Federal Tort Claims Act (FTCA).[11] In *Miele v. United States*, 800 F.2d 50 (2d Cir.1986), the parents of an infant who was injured when a soldier threw sulfuric acid in the child's face sued the United States under the FTCA. The plaintiffs claimed that the FTCA intentional tort exception that bars suit against the government for "any claims arising out of assault [or] battery," 28 U.C.A. § 2680(h), did not apply in their case because the assailant was adjudicated insane and therefore was incapable of forming the intent necessary to commit an assault. *Id.* at 52.

In affirming dismissal of the suit, the Second Circuit Court of Appeals refused to read such a distinction into the FTCA. The court reasoned,

> in effect appellants ask us to hold that the mental incapacity of a government employee creates a waiver of sovereign immunity where the tortious conduct itself—absent the employee's insanity—would otherwise have fallen within one of the FTCA's express exemptions from that waiver.... Since the government has exempted itself from liability in a case where one of its employees viciously attacks another, its fault or involvement in such conduct does not change depending upon whether the aggressor was sane or insane at the time. As the Supreme Court said in [*United States v. Shearer*, 473 U.S. 52, 55, 105 S.Ct. 3039, 3041, 87 L.Ed.2d 38 (1985)], "it appears that Congress believed that § 2680(h) would bar claims arising out of a certain type of *factual situation*—deliberate attacks by government employees."

amendment, Wright will conceivably be able to correct that deficiency as well, and will therefore be rewarded for her error.

date when the order of dismissal was signed on October 2, 1992, in which to correct the problems with her complaint.

**10.** In footnote 1 of the dissenting opinion, Judge Billings states that the two year delay in having the trial court decide the motion to dismiss was not necessarily Wright's fault. Whether the delay was Wright's fault or not is irrelevant. Our point is that Wright was on notice for two years that her complaint was deficient and never attempted to amend it. The already obvious deficiencies were underscored when the trial court acknowledged at oral argument on the motion that Wright's allegations about the employee's mental state were beyond the pleadings. Wright had approximately three months from the date of oral argument, held on July 10, 1992, and the

**11.** Under the FTCA, the federal government is immune from suit for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h) (1965). Because Utah's exception to waiver of governmental immunity in section 63–30–10(2) generally parallels section 2680(h) of the FTCA, we may look to federal cases for guidance on interpreting that section. *See Little v. Family Servs.*, 667 P.2d 49, 52 (Utah 1983) (interpreting section 63–30–10(1)); *Frank v. State*, 613 P.2d 517, 519 (Utah 1980) (same).

While an insane employee may or may not be less culpable personally for such attacks, the question of whether the injury was perpetrated deliberately or accidentally does not depend upon the employee's sanity [for purposes of the FTCA.] In either case, the government has declined to expose itself to liability for this type of an attack.

*Id.*

Similarly, in *Spaulding v. United States,* 621 F.Supp. 1150 (D.Maine 1985), the court dismissed an FTCA claim against the government based on the murder of a Job Corps participant by another participant who was insane. The court stated, "it seems extremely unlikely that Congress contemplated that the subsection 2680(h) exception would be avoidable on so amorphous a basis as the assailant's precise mental state at the moment of the commission of the tort." *Id.* at 1154. The reasoning in *Miele* and *Spaulding* is applicable to the instant case and is also consistent with the reasoning of the court in *Ledfors.*[12] Nothing in the Act or in our case law indicates that the distinction Wright champions was contemplated by the legislature to determine whether immunity exists under section 63–30–10(2). The focus is on the result, not the circumstances leading thereto. Because a party is not entitled to file an amended complaint when the new claim is legally insufficient or futile, *Andalex Resources, Inc. v. Meyers,* 871 P.2d 1041 (Utah App.1994), Wright's argument on this point fails.

In sum, we hold that section 63–30–10(2) bars Wright from suing the University for injuries she suffered as a result of a University employee's assault on her.

## IV. CONSTITUTIONALITY OF THE ACT

Wright argues that if the Act bars her action, then it is unconstitutional as applied to her case. Reiterating a theme we addressed in section III, supra, Wright claims that the Act does not provide immunity in this case because her injury did not result from the exercise of a governmental function, as that term has been defined by the Utah Supreme Court in *Standiford v. Salt Lake City Corp.,* 605 P.2d 1230, 1236–37 (Utah 1980). Thus, because no governmental function is involved, the immunity granted by the Act deprives Wright of a remedy under article I, section 11 of the Utah Constitution.[13] Wright also challenges the Act under the due process and uniform operation of laws provisions of the Utah Constitution. *See* Utah Const. art. I, §§ 7 & 24.

■ Article I, section 11 is implicated only if a statute denies a person the right to sue the state when the state performs a nongovernmental, as opposed to governmental, function. *McCorvey v. Department of Transp.,* 868 P.2d 41, 48 (Utah 1993); *id.* at 48–49 (Stewart, J., concurring and dissenting). If no violation of article I, section 11 exists, we apply a rational basis test to determine whether article I, section 7 or 24 has been violated. *Id.* at 47–48; *id.* at 49 (Stewart, J.). Thus, the first step in analyzing the constitutionality of the Act as applied in this case is to determine whether a governmental function is involved.

■ Wright acknowledges that in 1987, the legislature amended the Act to expand the definition of governmental function to include most acts of a government entity. *See* Utah Code Ann. § 63–30–2(4)(a).[14] Un-

---

**12.** *See also Hoot v. United States,* 790 F.2d 836, 838 (10th Cir.1986) (section 2680(h) barred suit against government based on attack by "mentally unbalanced" serviceman); *Wine v. United States,* 705 F.2d 366, 367 (10th Cir.1983) (plaintiff's suit against government based on assault by serviceman needing psychiatric care barred by section 2680(h)).

**13.** Article I, section 11 provides, in pertinent part:

All courts shall be open, and every person, for an injury done to him in his person, property

or reputation, shall have remedy by due course of law.

**14.** Section 63–30–2(4)(a), states:

"Governmental function" means any act, failure to act, operation, function, or undertaking of a governmental entity whether or not the act, failure to act, operation, function, or undertaking is characterized as governmental, proprietary, a core governmental function, unique to government, undertaken in a dual capacity, essential to or not essential to a government or governmental function, or could be

der that definition, the operation of a public school is a governmental function. *See Ledfors v. Emery County Sch. Dist.*, 849 P.2d 1162, 1164 (Utah 1993) (holding that language of section 63–30–2(4)(a) compels conclusion that operation of public school is governmental function). Therefore, under section 63–30–2(4)(a) as amended in 1987, the University is generally immune from suit because it exercises a governmental function.[15]

▮ Wright concedes that the operation of a public university by a government entity qualifies as a governmental function as defined in section 63–30–2(4)(a). She claims, however, that section 63–30–2(4)(a) as amended in 1987, violates article I, section 11 because it deprives her of the right she had to sue the University under the law as it existed prior to 1987 and at common law. Wright notes correctly that the legislature cannot necessarily remedy a constitutional deficiency in the Act by merely changing its language. *Hipwell v. Sharp*, 858 P.2d 987, 990 & n. 11 (Utah 1993). However, we need not address Wright's challenge to section 63–30–2(4)(a): Wright has not been deprived of a remedy against the University because she could not recover under the law as it existed prior to the 1987 amendment.

Before the 1987 amendment, the test for determining whether governmental immunity applied was "whether the activity under consideration is of such a unique nature that it can only be performed by a governmental agency or that it is essential to the core of governmental activity." *Standiford*, 605 P.2d at 1236–37. Although no Utah cases directly address whether a public university meets the standard developed by *Standiford* in 1980, we note that historically, public school districts were held immune from tort liability. *Campbell v. Pack*, 15 Utah 2d 161, 389 P.2d 464, 465 (1964) (per curiam); *Bingham*

*v. Board of Educ.*, 118 Utah 582, 223 P.2d 432, 434 (1950); *Woodcock v. Board of Educ.*, 187 P. 181, 183 (Utah 1920).

Moreover, the University performs a vital function in Utah, one not equalled by any private institution of higher education in the state. As the Michigan Court of Appeals explained in finding that a school district's activities qualify as a governmental function,

> The government plays a pervasive role in the area of education, appropriating substantial state funds to that field and declaring education as a public policy. The number of private schools is inadequate to meet the educational needs of the public. Finally, while private schools exist to educate some students, the provision of a free and universal education is a uniquely governmental function.

*Deaner v. Utica Community Sch. Dist.*, 99 Mich.App. 103, 297 N.W.2d 625, 628 (1980) (citations omitted).[16] Although *Deaner* involved a high school, the reasoning provided by the court is applicable to a public university as well. The State of Utah appropriates substantial funds to the University, and the University in turn provides Utah students with an education that, while not free, is substantially discounted over the costs of a private institution. Thus, the University's activities can be classified as "essential to the core of governmental activity" under the *Standiford* test. We conclude that the University's irreplaceable role in our community, coupled with the historical immunity granted public schools in Utah, qualifies its operation as a governmental function even under *Standiford*'s more stringent definition of that term. Thus, Wright has not been denied a remedy against the University under article I, section 11.

▮ Wright argues alternatively that even if the Act does properly preclude recovery against the University, it nonetheless

performed by private enterprise or private persons.

**15.** Wright again argues that the employee who struck her must have been personally involved in a governmental function. As discussed previously in section III, we are disinclined to create a distinction based on the specific occupation of a government employee when the government employer's activity is otherwise considered a governmental function under the Act.

**16.** Michigan's definition of governmental function is especially relevant because *Standiford*'s definition of that term was derived, in large part, from Michigan case law. *Standiford*, 605 P.2d at 1236.

violates article I, section 11 because it also denies her a remedy against the individual employee, thus leaving her entirely without redress. Wright claims she does not have an alternative remedy against the individual employee because under section 63-30-4(3)(b), government employees may not be sued for their wrongful acts committed within the scope of employment unless they "acted or failed to act through fraud or malice." Utah Code Ann. § 63-30-4(3)(b). Wright argues she may not be able to prove malice because the employee may have lacked the intent to commit the attack. Even if we did consider evidence of the employee's intent not contained in the complaint, we cannot address this claim because Wright has never joined the employee in this action, choosing instead to sue only the University and State of Utah.[17] Wright cannot claim she has been denied a remedy against an individual she has not sued. *See Payne v. Meyers*, 743 P.2d 186, 190 (Utah 1987) (finding that plaintiffs were not denied a remedy under article I, section 11: Even though they were barred from suing individual state doctors under section 63-30-4, they would have had remedy against State itself if they filed notice of claim within statutorily required period); *DeBry v. Salt Lake County*, 835 P.2d 981, 988 (Utah App.1992), *cert. granted*, 843 P.2d 1042 (Utah 1992) (fraud claim against state employee barred under section 63-30-4 because plaintiffs sued employee in representative capacity only).

Also, as the trial court found, Wright's failure to join the individual due to her claimed, but unsupported and unpleaded, difficulty in showing malice on the part of the employee "does not equate with impossibility." Wright could have joined the employee in this action and attempted to prove a case against him. We can reach the issue of whether Wright has been unconstitutionally denied a remedy against the individual under section 63-30-4 only when it has been pre-

sented to us squarely. Had Wright joined the individual employee and been denied a right to sue him (as well as the University) under the Act, then her constitutional challenge to section 63-30-4 may have been before us.

■ Next, we consider Wright's assertion that denying her a remedy against the University offends both article I, sections ·7 and 24 of the Utah Constitution.[18] In *McCorvey v. Department of Transp.*, 868 P.2d 41 (Utah 1993), the Utah Supreme Court noted that if a government entity is engaged in a governmental function, "the legislature is free to limit the state's liability in that area without implicating [article I, section 11] and its concomitant heightened scrutiny." *Id.* at 48. The court determined that if no fundamental right arises under article I, section 11, then "the legislation's opponent has the burden of proving unconstitutionality" under a rational basis test. *Id.; see also Lee v. Gaufin*, 867 P.2d 572, 580 & n. 10 (Utah 1993) (noting that a presumption of constitutionality is extended to all statutes).

Wright's challenge under article I, sections 7 and 24 cannot be sustained. "Under the rational basis, or least restrictive standard, a statutory classification is constitutional unless it has no rational relationship to any reasonably conceivable legislative purpose." *Lee*, 867 P.2d at 580 (citations omitted). Wright assumes that a heightened level of scrutiny should apply and does not meet her burden of showing that the Act, as applied to her, cannot withstand a challenge under the more deferential minimum level scrutiny. *See McCorvey*, 868 P.2d at 48-49. We therefore affirm the trial court's well-reasoned decision determining that the Act is constitutional as applied to Wright.[19]

## V. CONCLUSION

Wright's complaint, which alleged that a University employee "assaulted and struck"

---

17. The discussion regarding the chronology of Wright's failure to amend her complaint for a period of approximately two years, supra, applies equally to this issue.

18. Article I, section 7 states: "No person shall be deprived of life, liberty or property, without due process of law." Article I, section 24 states: "All

laws of a general nature shall have uniform operation."

19. We decline to go beyond the facts in this case to reach Wright's claim that the Act is unconstitutional on its face.

her, was properly dismissed for failing to state a claim in the face of Utah Code Ann. § 63–30–10(2) (1993). Moreover, the Act is not unconstitutional as applied to her. We therefore affirm the trial court's ruling dismissing Wright's complaint.

BENCH, J., concurs.

BILLINGS, Presiding Judge (dissenting):

I respectfully dissent. As the majority opinion correctly states, we can affirm the dismissal "only if it clearly appears the complainant can prove no set of facts in support of his or her position." This court has previously held that

> [d]ismissal of a claim under Rule 12(b)(6) is a severe measure given the liberality of notice pleading.... When challenging a dismissal under Rule 12(b)(6) the appellant is entitled to a generous standard of review. We "construe the [pleading] in the light most favorable to the [claimant] and *indulge all reasonable inferences in [the claimant's] favor.*"

*Olson v. Park–Craig–Olson, Inc.,* 815 P.2d 1356, 1360 (Utah App.1991) (emphasis added) (citation omitted) (quoting *Mounteer v. Utah Power & Light Co.,* 773 P.2d 405, 406 (Utah App.1989)).

Under that standard, I conclude the trial court erred in dismissing Wright's claim. In her complaint, Wright alleged that the University employee "assaulted and struck" her. A reasonable inference of this allegation is that Wright claimed both an intentional and a negligent striking. Such a construction does not, as the majority contends, require us to "add facts or causes of action to the complaint that do not exist." Rather, "assaulted" and "struck" can and should be read separately. If they are read as one and the same, then the use of both terms is redundant. *See, e.g., Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n,* 857 P.2d 935, 941 (Utah 1993) (acknowledging that use of "and" in enumerating three requirements for proving waiver either was a "redundant rephrasing[ ]" or "ha[d] the inevitable effect of suggesting to the reader that each statement means a different thing or else each would not be required."); *see also California First Bank v. State,* 111 N.M. 64, 72, 801 P.2d 646, 654 (N.M.1990).

The majority asserts that if Wright had intended to advance two alternative theories, she should have taken more definitive steps to develop her factual theory in her complaint, not in her responsive memorandum to the State's motion to dismiss. However, this is not the purpose of notice pleading.[1] Given the early stage in the development of this case and the liberal requirements of notice pleading, I would allow the case to proceed on the alternative theories alleged in the complaint. Other courts have similarly denied a government entity's motion for summary judgment, recognizing the necessity for "further development of the record" before concluding "that the substance of plaintiffs' claim is that defendants committed an intentional tort barring suit against the government...." *Ricca v. United States,* 488 F.Supp. 1317, 1323 (E.D.N.Y.1980). Wright should be given an opportunity to develop her theory that the University is liable for an unintentional (negligent) striking by its employee.[2]

---

1. The majority also faults Wright for the two-year period between the filing of the complaint and the entry of the order of dismissal. However, it is not clear from the record which party was responsible for the delay. Indeed, the University filed the motion to dismiss and could just as easily be at fault for failing to submit its motion for a decision. In any event, the fact that Wright did not amend her complaint during that two-year period is not dispositive if she believed her complaint was sufficient. While she may have been better served by an amended complaint, that is not the issue before us; instead, we are charged only with evaluating her complaint under the liberal rules of notice pleading.

2. The University may be held liable for the employee's negligent striking under the theory of respondeat superior. Utah Code Ann. § 63–30–10 (1993); *accord J.H. v. West Valley City,* 840 P.2d 115, 122–23 (Utah 1992) (evaluating respondeat superior claim and holding plaintiff failed to meet burden of proof); *Birkner v. Salt Lake County,* 771 P.2d 1053, 1056–58 (Utah 1989) (concluding County not liable under respondeat superior doctrine because employee's conduct was outside scope of employment). The University may also be liable for its negligent supervision of the employee if the assault and battery exception does not apply. *See Birkner,* 771 P.2d at 1059 ("[e]ven when the doctrine of respondeat superior is inapplicable, an employer

Finally, the majority faults Wright for failing to join the employee as a defendant, claiming that as a result she may not recover on her respondeat superior theory against the University. I disagree. In *Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055 (Utah 1991), the supreme court allowed a suit to proceed against a non-governmental employer under the theory of respondeat superior without joinder of the individual employee. Addressing an alleged defamation by an employee not named as a defendant, the court stated that "[c]ommon law rules of agency and respondeat superior should be applied to determine [the employer's] liability, if any . . . ." *Id.* at 1058.

Furthermore, the Governmental Immunity Act makes joinder of the defendant in a representative capacity permissive rather than mandatory and bars personal liability unless the employee is guilty of fraud or malice. *See* Utah Code Ann. § 63–30–4(4) (1993). The majority would have Wright sue the employee as an individual and attempt to prove a claim of malice before advancing her open courts challenge. It makes little sense, however, to require Wright to allege fraud or malice without any basis for such an allegation; in fact, by so holding we would encourage litigants to file false claims.

Moreover, even if I agreed that Wright must join the employee, I would nevertheless allow her case to proceed because she will have ample opportunity to join him after the State files an answer. Wright's failure to join the employee should not result in the dismissal of her complaint against the University.

In sum, I believe the majority mistakenly relies on a technical, mechanistic reading of Wright's complaint. I would reverse the dismissal of her complaint and remand to allow Wright her day in court.

may be liable for its negligence in the hiring or supervision of an employee."). The decision in *Ledfors v. Emery County School District*, 849 P.2d 1162 (Utah 1993), does not bar the negligent supervision claim because its holding applies only when the assault and battery exception is implicated. Moreover, this claim is colorable notwithstanding the amendment to the Governmental Immunity Act's definition of "governmental function." *See* Utah Code Ann. § 63–30–2(4)(a) (1993). Whether that amendment will ultimately defeat Wright's claim on the merits should not be decided in the litigation's infancy.