2000 UT 56

**STATE of Utah, Plaintiff and Appellee,**

v.

**Becky BURNS, Defendant and Appellant.**

**No. 970190.**

Supreme Court of Utah.

June 30, 2000.

Jan Graham, Att'y Gen., Laura B. Dupaix, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Craig S. Cook, Salt Lake City, for defendant.

RUSSON, Associate Chief Justice:

¶ 1 Defendant Becky Burns appeals from a final judgment of conviction for murder, a first degree felony. Burns alleges that the lower court erred in denying her access to state-funded assistance for expert witnesses, thereby denying her a fair trial.

## BACKGROUND

¶ 2 In September 1991, Becky Burns and her husband Richard Burns were charged by information with the murder, by starvation and dehydration, of their six-month-old son Shawn. Shawn suffered from Down syndrome, congenital heart disease, desaturation, gastroesophageal reflux, sucking and feeding problems, and low electrolyte levels. In addition, there were indications that Shawn suffered from chronic pulmonary disease. The Burnses argued that all of these conditions, in conjunction with their side effects and the side effects of the drugs administered in their treatment, caused Shawn's death.

¶ 3 Becky's father paid for counsel to represent both Becky and her husband as co-defendants. Because defense counsel felt this case was medically intensive, he decided that a medical expert was necessary to provide the Burnses with effective representation. However, Becky's father was allegedly of limited means. He had apparently posted bond for the Burnses, paid a pediatrician $300 per hour for consultation at the preliminary hearing, and paid the attorney fees to that point. As a result, he claimed that he was behind in house payments and could not afford the additional expense of an expert witness.

¶ 4 In addition, the Burnses, apparently neither of whom had completed high school, alleged that they were living with Richard's mother, who was single and unemployed. Becky also claimed that she was not working and that Richard, who was working for Becky's father, was making only $100 per week. Expenses for the treatment and care of Shawn Burns had been provided by the State. Since defendants and their families allegedly could not afford the expense of an expert witness, defense counsel moved for

the appointment of a state-funded expert witness.

¶ 5 At the hearing on this motion, defense counsel presented evidence for the necessity of expert witness assistance in this particular case. Counsel then relayed the alleged financial situation of the Burnses and their immediate families. Defense counsel also offered to submit affidavits as proof of his clients' indigence. Counsel concluded his argument by asking the court to find that the Burnses were indigent, that a medical expert was necessary, and that it was proper for the State to fund an expert.

¶ 6 On behalf of the State, the prosecution acknowledged that its case relied to a substantial degree on expert medical testimony and it was reasonable for the defense to feel the need to hire expert witnesses. The prosecution also cited rule 15 of the Utah Rules of Criminal Procedure governing expert witnesses, and stated that this rule indicated the court first needed to make a determination of indigency. If the Burnses were found to be indigent, the prosecution argued, the issue of how to pay for expert assistance could then be addressed.

¶ 7 However, the court never arrived at a determination of whether the Burnses were indigent. Instead, after inquiring whether defense counsel was pro bono, the court declared that according to court policy, which was urged by the county, if a defendant was truly indigent, the defendant may have counsel appointed from the Legal Defenders Association ("LDA") and then have access to the funds for expert assistance. Defense counsel argued that the Burnses wished to retain the attorney of their choice and that the court's policy conflicted with this right. The court indicated that since defense counsel was privately retained, it was doubtful that the Burnses were truly indigent. Nevertheless, the position ultimately maintained by the court was that the Burnses would have to make the decision as to whether to retain their counsel, paid for by Becky's father, or if they were ultimately found to be indigent so as to qualify for funds for expert witnesses, the court would appoint LDA counsel and then the funds for expert assistance would be available.

¶ 8 Therefore, without making a finding on the issue of indigence, the court denied the motion for appointment of expert assistance and scheduled a pretrial conference for two weeks later. The court did not deny funds for an expert witness outright, but made it clear that if the Burnses were indigent, they could get state-funded expert assistance only if they were represented by LDA counsel. Therefore, the Burnses were to decide before the pretrial conference whether they wanted to retain their counsel or apply for determination of indigency and accept appointment of LDA counsel.

¶ 9 The Burnses wanted to retain the counsel Becky's father had engaged but claimed they were unable to pay the expense of an expert witness. Therefore, they proceeded to trial with no experts of their own. On August 20, 1992, the jury convicted both Becky and her husband of criminal homicide. Defendants timely moved for a new trial and/or arrest of judgment on the ground of jury misconduct, but defense counsel withdrew from the case without obtaining a ruling on these motions.

¶ 10 Becky was sentenced to five years to life in prison, but the sentence was suspended in favor of three years of probation, one year in the Salt Lake County jail, a fine, drug and alcohol rehabilitation, vocational training, completion of a GED, and completion of parenting classes.

¶ 11 Becky violated her probation after two years and was ordered to serve six months in jail. She was also ordered to complete a residential substance abuse program and three more years of probation. Becky did not complete the residential substance abuse program, and therefore, her probation was revoked. In April 1996, Becky's original sentence of five years to life was imposed with credit for time served. Becky was then sent to the women's correctional facility at the Utah State Prison.

¶ 12 On July 9, 1996, Becky moved for a ruling on her earlier motion for a new trial. The trial court denied the motion on the basis of abandonment, but on March 24, 1997, the State conceded that Becky had been denied her right to appeal and so stipu-

lated. Thereupon, Becky was sentenced nunc pro tunc. A notice of appeal was thereafter filed to this court on April 11, 1997.

¶ 13 Becky argues on appeal that she was deprived of a fair trial in that she was required to utilize the attorney services of the LDA or forfeit any right to other indigent benefits such as expert witness fees. She claims that this is not only a violation of her federal and state constitutional rights but also violative of the Utah Indigent Defense Act [1] as well as public policy. In addition, Becky contends that the trial court was in error in surmising that she was not eligible to be considered indigent if her family retained an attorney.

¶ 14 The State counters that because Becky did not establish her indigence on the record, she has not preserved her claim for appeal and it is therefore waived. Alternatively, the State argues that the trial court was correct in conditioning Becky's right to state-funded assistance on her acceptance of LDA counsel.

## STANDARD OF REVIEW

¶ 15 The question of whether a trial court can require a defendant to accept LDA counsel in order to qualify for other state-funded assistance is a matter of statutory interpretation, and we review a trial court's statutory interpretation for correctness. *See Rushton v. Salt Lake County*, 1999 UT 36, ¶ 17, 977 P.2d 1201.

## ANALYSIS

### I. WAIVER OF RIGHT TO APPEAL

¶ 16 First we must determine whether Becky Burns has waived her right to appeal. The State contends that when Burns failed to establish her indigence on the record, she waived her right to appeal the decision that she was not entitled to state-funded expert assistance unless she accepted LDA counsel. As support for this position, the State cites *Cunningham v. Cunningham*, 690 P.2d 549 (Utah 1984), and *In re Giles*, 657 P.2d 285

(Utah 1982). We find both cases to be distinguishable from the situation before us now.

¶ 17 It is true that an appellate court generally will not review any issue that was not raised in the court below. *See* 5 Am. Jur.2d *Appellate Review* § 690 (1995). This is based in part on the principle that it is unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. *See State v. Peterson*, 121 Utah 229, 236, 240 P.2d 504, 507 (1952); 5 Am.Jur.2d *Appellate Review* § 690. However,

> [w]e have never required criminal defendants who have properly presented a claim to take exception to a trial court's erroneous ruling in order to preserve the issue on appeal. Rather, our case law establishes that the doctrine of waiver has application if defendants fail to raise claims at the appropriate time at the trial level, so the trial judge has an opportunity to rule on the issue or if they do not create an adequate record for an appellate court to review their claims.

*State v. Emmett*, 839 P.2d 781, 783–84 (Utah 1992) (footnote omitted).

¶ 18 Accordingly, in *Cunningham*, we declined to address a statute of frauds issue because the plaintiff had not raised it before the trial court. It was first raised in a post-trial memorandum. *See Cunningham*, 690 P.2d at 552 n. 2. Furthermore, in *Giles*, we declined to reach the issue of attorney fees because the issue was not raised until appeal. *See Giles*, 657 P.2d at 289. *But see Sittner v. Schriever*, 2000 UT 45, ¶¶ 16–17, 2 P.3d 442 (holding that it was not necessary for appellant to file post-judgment motions with trial court specifically objecting to judgments in order to preserve right to appeal and that appellant preserved issues appealed by fully briefing them in memoranda and other pleadings filed with trial court).

¶ 19 In contrast to *Cunningham* and *Giles*, however, Burns's indigence and her eligibility for state-funded assistance were raised before the trial court. Defense counsel moved for the appointment of an expert

---

1. *See* Utah Code Ann. §§ 77-32-101 to -704 (1999) (originally enacted as Utah Code of Criminal Procedure, ch. 15, § 2, 1980 Utah Laws 110, 208-09).

witness, submitted a supporting memorandum, and argued at the hearing held on the matter. In the memorandum and at the hearing, defense counsel provided support for the necessity of an expert witness, offered evidence as to Burns's indigence, and offered to submit affidavits to support Burns's claim of indigence. Without arriving at a determination of indigency, the court denied the motion. The court told Burns that if she were truly indigent, the court would appoint her an attorney through the LDA. Only if Burns accepted appointment of LDA counsel would the funds for an expert be available to her.

¶ 20 Thus, Burns was put in a position where she had no choice. Due to the trial court's declaration, she was not given an opportunity to have her indigence determined without conditions imposed. Nonetheless, she maintained below that she was indigent and entitled to a state-funded expert. We conclude, therefore, that Burns has not waived her right to appeal.

## II. RIGHT TO EXPERT ASSISTANCE

¶ 21 Burns contends that the trial court erred in requiring her to choose to either (1) keep her attorney, retained by her father, and forgo access to state-funded expert assistance; or (2) give up the attorney her father had retained and accept LDA counsel who would then provide her with access to such assistance. She provides arguments under the federal and state constitutions as well as the Utah Indigent Defense Act and public policy.

¶ 22 The Sixth Amendment provides, "In all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. In *Foster v. Illinois*, the United States Supreme Court held that this provision of the Sixth Amendment means that "counsel must be furnished to an indigent defendant prosecuted in a federal court in every case, whatever the circumstances." 332 U.S. 134, 136–37, 67 S.Ct. 1716, 91 L.Ed. 1955 (1947). Subsequently, the Supreme Court held that the right to assistance of counsel for criminal defendants was a fundamental right of due process and thereby applicable to the states

by way of the Fourteenth Amendment. *See Gideon v. Wainwright*, 372 U.S. 335, 339–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

¶ 23 Furthermore, the Supreme Court has held in several cases that the Fourteenth Amendment right to due process means that this right to counsel includes *effective* assistance of counsel. *See Evitts v. Lucey*, 469 U.S. 387, 391–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (effective assistance also applies at appellate level); *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (guarantee of effective assistance means indigents must be afforded adequate legal assistance); *Reece v. Georgia*, 350 U.S. 85, 89–90, 76 S.Ct. 167, 100 L.Ed. 77 (1955) (assignment of counsel after indictment was not effective assistance of counsel); *Powell v. Alabama*, 287 U.S. 45, 71–73, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (trial judge's general appointment of "all members of the bar" for arraignment and then failure to appoint counsel for trial was not effective assistance of counsel). In furtherance of this premise, the Court in *Britt v. North Carolina* held that as a matter of equal protection, a state must "provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971); *see also Ake v. Oklahoma*, 470 U.S. 68, 76–77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (holding that to provide effective defense, indigent defendants must have access to basic tools of defense).

¶ 24 It is this line of decisions by the United States Supreme Court that prompted states to implement acts such as the Utah Indigent Defense Act (the "Act") to ensure that the Sixth Amendment right to effective assistance of counsel includes access for indigents to the basic tools of defense. We now turn to the Act to determine whether Burns was denied her right to a fair trial when she was required to use the attorney services of the LDA or forfeit her right to all other indigent benefits.

¶ 25 First, our primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain

language, in light of the purpose the statute was meant to achieve. *See Evans v. State,* 963 P.2d 177, 184 (Utah 1998). We need look beyond the plain language only if we find some ambiguity. *See id.* "In analyzing a statute's plain language, we must attempt to give each part of the provision a relevant and independent meaning so as to give effect to all of its terms." *V–1 Oil Co. v. State Tax Comm'n,* 942 P.2d 906, 917 (Utah 1997). However, if we find a provision that causes doubt or uncertainty in its application, we must "analyze the act in its entirety and 'harmonize its provisions in accordance with the legislative intent and purpose.' " *Beynon v. St. George–Dixie Lodge # 1743,* 854 P.2d 513, 518 (Utah 1993) (quoting *Osuala v. Aetna Life & Cas.,* 608 P.2d 242, 243 (Utah 1980)). Nevertheless, a statute's unambiguous language "may not be interpreted to contradict its plain meaning." *Zoll & Branch, P.C. v. Asay,* 932 P.2d 592, 594 (Utah 1997).

¶ 26 Burns's motion to appoint an expert witness was heard on April 10, 1992. At that time, the Act provided:

The following are minimum standards to be provided by each county, city and town for the defense of indigent persons in criminal cases in the courts and various administrative bodies of the state:

(1) Provide counsel for every indigent person who faces the substantial probability of the deprivation of his· liberty;

(2) Afford timely representation by competent legal counsel;

(3) Provide the investigatory and other facilities necessary for a complete defense;

(4) Assure undivided loyalty of defense counsel to the client; and

(5) Include the taking of a first appeal of right and the prosecuting of other remedies before or after a conviction, considered by the defending counsel to be in the interest of justice except for

other and subsequent discretionary appeals or discretionary writ proceedings.

Utah Code Ann. § 77–32–1 (1990) (enacted by Utah Code of Criminal Procedure, ch. 15, § 2, 1980 Utah Laws 110, 209 (amended 1983)) (current version at Utah Code Ann. § 77–32–301 (Supp.1999)).[2] In addition, the Act provided that the

[g]overning bodies of counties, cities and towns shall either:

(1) Authorize the court to provide the services prescribed by this chapter by appointing a qualified attorney in each case and awarding him reasonable compensation and expenses to be paid by the appropriate governing body; or

(2) Arrange to provide those services through non-profit legal aid or other associations.

Utah Code Ann. § 77–32–6 (1990) (enacted by Utah Code of Criminal Procedure, ch. 15, § 2, 1980 Utah Laws 110, 209) (current version at Utah Code Ann. § 77–32–306 (Supp. 1999)).[3]

¶ 27 Thus, section 77–32–1 separately listed five requirements that were the minimum standards a county had to provide to an indigent defendant. Additionally, section 77–32–6 allowed a county two options for providing those minimum standards. *See also Washington County v. Day,* 22 Utah 2d 6, 10, 447 P.2d 189, 192 (1968) (holding that section one obligates county to furnish minimum standards and section six provides two options for providing standards).

¶ 28 Burns argues that nothing in section 77–32–1 conditions expert assistance on the appointment of state-funded counsel. The minimum standards available to an indigent defendant are listed in section 77–32–1 as five discrete subsections. This is an indication that the right to counsel stands separate and distinct from the right to the "investigatory and other facilities necessary for a complete defense."[4] Furthermore, it is clear

---

**2.** Aside from stylistic changes and the dividing of the fifth standard requirement into subsections (5) and (6), Utah Code Ann. § 77–32–301 is essentially identical to its predecessor, section 77–32–1.

**3.** Utah Code Ann. § 77–32–306 is essentially the same as section 77–32–6.

**4.** As further evidence of the distinct nature of each separate requirement, the Utah Legislature later found it opportune to further separate the

from the plain language of that section that a county must "[p]rovide the investigatory and other facilities necessary for a complete defense" to every indigent person, not just to those represented by the LDA. There is nothing in the section that conditions availability of these basic tools of defense on acceptance of LDA counsel. Instead, under the plain language of section 77–32–1, the only deciding factors of eligibility for this type of assistance are that the defendant in a criminal case be *indigent* and that the investigatory and other facilities be *necessary* to a complete defense.

¶ 29 The State argues, however, that section 77–32–6 should be read to provide that the "investigatory and other facilities necessary for a complete defense" need be furnished to an indigent defendant only if the LDA is representing that defendant. To resolve the State's contention, we must analyze the Act in its entirety and harmonize sections 77–32–6 and 77–32–1 in accordance with the legislative intent and purpose of providing indigents with access to the basic tools of defense. In doing so, the unambiguous language of section 77–32–1 may not be interpreted to contradict its plain meaning.

¶ 30 Section 77–32–6 provides that a county may set up a nonprofit legal aid association to provide the minimum required services or authorize the court to appoint such services. However, this section cannot be read to mandate the packaging of indigent assistance with LDA representation. To suggest, as the State does, that only those indigents represented by LDA are eligible for the minimum services would be a direct contradiction of the plain meaning of section 77–32–1 as well as the legislative purpose of providing indigents with the basic tools of defense. In fact, contrary to its argument, the State indicated at oral argument that an indigent defendant proceeding pro se who has declined standby counsel from the LDA would be able to acquire funding for expert assistance. *See generally State v. Bakalov,* 1999 UT 45, ¶¶ 9, 35, 979 P.2d 799 (indigent defendant refused LDA counsel and proceeded pro se but had independent expert witness to testify at hearing).

¶ 31 Furthermore, rule 15 of the Utah Rules of Criminal Procedure provides that "[u]pon showing that a defendant is financially unable to pay the fees of an expert whose services are necessary for adequate defense, the witness fee shall be paid as if he were called on behalf of the prosecution." Utah R.Crim. P. 15(a).[5] There is no indication in this rule that a defendant must be represented by LDA to qualify for this assistance. Instead, the only prerequisites for eligibility are financial inability to pay and necessity for an adequate defense.

¶ 32 It follows, therefore, that the only requirements for receiving public assistance for expert witnesses are proof of necessity and establishment of indigence.[6] It is up

---

fifth minimum requirement into a fifth and a sixth requirement. *See supra* note 2.

5. Rule 15(a) has not changed in substance or style since its original enactment by the Utah Legislature as Utah Code Ann. § 77–35–15(a) in 1980. *Compare* Utah R.Crim. P. 15(a) *with* Utah Code Ann. § 77–35–15(a) (Supp.1980).

6. Numerous other states with comparable statutes have held similarly. *See, e.g., Thompson v. State,* 525 So.2d 1011, 1011 (Fla.Dist.Ct.App. 1988) (defendant not required to accept public defender's services to obtain reasonable discovery costs paid by county); *Arnold v. Higa,* 61 Haw. 203, 600 P.2d 1383, 1384–85 (1979) (Hawaii statute provides that defendant with private counsel is entitled to investigator paid by public funds upon showing of necessity and indigency); *In re Cannady,* 126 N.J. 486, 600 A.2d 459, 461– 62 (1991) (New Jersey Public Defender Act requires office of public defender to provide all other necessary expenses of representation, not just for indigents represented by office of public defender); *State v. Wool,* 162 Vt. 342, 648 A.2d 655, 659–60 (1994) (Vermont Public Defender Act provides right to services and facilities of representation and cannot be conditioned on acceptance of services of attorney appointed by public defender); *see also English v. Missildine,* 311 N.W.2d 292, 293 (Iowa 1981) (Iowa R.Crim. P. 19(4) is "authority for permitting an indigent defendant represented by private counsel to obtain the testimony of expert witnesses at trial at public expense"); *cf. Williams v. Martin,* 618 F.2d 1021, 1027 (4th Cir.1980) (judge's refusal to provide publicly funded expert to indigent defendant with private counsel was violation of Sixth and Fourteenth Amendments); *People v. Worthy,* 109 Cal.App.3d 514, 167 Cal.Rptr. 402, 405–06 (1980) (defendant represented by private counsel constitutionally entitled to publicly funded experts if defendant showed indigency and necessity); *Widdis v. Second Jud. Dist. Ct.,* 114 Nev. 1224, 968 P.2d 1165, 1167–68 (1998) (criminal

to the court, not the LDA, to determine indigency and therefore eligibility. *See* Utah Code Ann. § 77–32–4 (1990). While who is paying for a defendant's attorney may be a factor in the determination of indigency, it is not the determinative factor,[7] and in this case, the court did not allow Burns to have her hearing on indigence without condition of LDA representation. Therefore, the trial court erred in failing to determine whether Burns was indigent and in holding instead that LDA representation was a prerequisite to providing the statutorily required minimum standards for an indigent defense. As a result, even though Burns's father was paying for her defense attorney, Burns was entitled to a hearing for a determination of whether she was indigent without the condition that she accept LDA counsel.

## III. INDIGENCY

¶ 33 Burns argues that the trial court erred in concluding that she was not considered indigent if her family retained an attorney. At the time of the hearing, in April 1992, the determination of indigency was left entirely to the discretion of the trial court in Utah. Since that time, however, the Utah Legislature has defined the standards upon which to determine indigency. *See* Utah Code Ann. § 77–32–202 (Supp.1999) (originally enacted as Counsel for Indigent Defendants, ch. 307, § 1, 1997 Utah Laws 1181, 1181). However, in the instant case, the trial court never found whether Burns was indigent. While it is true the court made a comment to the effect that since Burns's attorney was not pro bono it would indicate that Burns may not be indigent, the court did not base its decision to deny access to expert witness funding on a decision of whether Burns was indigent. Instead, the court erroneously insisted on packaging indigent assistance with LDA representation and therefore never provided Burns with a hearing on indigence.

defendant with private counsel entitled under Sixth Amendment to reasonable defense services at public expense based on showing of indigency and necessity).

7. See Utah Code Ann. § 77–32–202(3) (Supp. 1999) for an explanation of the term "indigency"

## IV. REVERSIBLE ERROR

¶ 34 Burns asserts that the denial of state funds to retain an expert witness on her behalf was prejudicial error, and therefore, she asks us to reverse her conviction. The State counters that if we find the trial court erred, the record is inadequate and we should remand to the trial court for a determination of whether the error was harmless.

¶ 35 We believe the record is adequate for a determination of whether the trial court's error was harmful or prejudicial enough to justify overturning Burns's conviction. However, we will not reverse a conviction " 'unless the error is substantial and prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a more favorable result for the defendant.' " *State v. Young,* 853 P.2d 327, 361 (Utah 1993) (quoting *State v. Johnson,* 771 P.2d 1071, 1073 (Utah 1989)).

¶ 36 At the hearing on the motion to appoint an expert witness, defense counsel showed that expert testimony was indeed necessary to Burns's defense. Shawn Burns suffered from Down syndrome, congenital heart disease, desaturation, gastroesophageal reflux, sucking and feeding problems, low electrolyte levels, and chronic pulmonary disease. He was also taking strong medications for some of these conditions. The prosecution acknowledged that the State's case relied "to a very substantial degree upon expert medical testimony," and he could understand why the defense wanted an expert. In fact, the prosecution said it would be the "reasonable thing to do."

¶ 37 Burns's lack of a medical expert in such a medically intensive case prevented the presentation of any such evidence on her behalf. It also prevented defense counsel from effectively cross-examining the State's medical witnesses, providing any rebuttal, or being able to make any informed decision

and the factors a court shall consider in making a determination of indigency. Who is paying for the defendant's attorney could fall under the "other relevant factors" that a court shall consider. *Id.* § 77–32–202(3)(b)(v).

with respect to plea bargaining. Thus, there is a reasonable likelihood that there would have been a more favorable result for Burns if she had been provided a medical expert.

## CONCLUSION

¶ 38 We hold that Burns was entitled to a hearing for a determination of whether she was indigent regardless of who was paying her attorney fees. She was deprived of that right. The matter is remanded to the trial court for a determination of whether Burns was indigent and entitled to expert witness funding, therefore entitling her to a new trial.

¶ 39 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Associate Chief Justice RUSSON's opinion.