2011 UT App 53

Korilee LILLY, Petitioner and Appellee,

v.

Aaron M. LILLY, Respondent
and Appellant.

No. 20090933–CA.

Court of Appeals of Utah.

Feb. 25, 2011.

Mark W. Wiser, Salt Lake City, for Appellant.

David R. Blaisdell, Salt Lake City, for Appellee.

Before Judges ORME, ROTH, and CHRISTIANSEN.

## OPINION

ROTH, Judge:

¶ 1 Aaron M. Lilly, who physically resides in California due to his active duty service in the military but claims legal residence in Utah, appeals the district court's dismissal of his petition to modify a child support order that was originally issued in California as part of a California divorce decree. In dismissing the petition to modify, the district court concluded that under the Uniform Interstate Family Support Act, *see* Utah Code Ann. §§ 78B–14–205, –613 (2008) (setting forth the relevant provisions regarding jurisdiction to modify a child support order),[1] subject matter jurisdiction to modify a child support order is determined by a person's physical residence rather than that person's domicile or legal residence. We reverse and remand.

## BACKGROUND

¶ 2 Aaron M. Lilly (Father) is an active duty member of the United States Marine Corps. He is currently stationed in California. Father was born and raised in Utah and graduated from high school in Utah. His home of record[2] is Utah as he was a Utah resident when he enlisted in the Marines in 1994. Father claims that he has maintained his Utah domicile since his enlistment in the Marines by paying Utah taxes, registering to vote in Utah, having a Utah driver license, listing his home state as Utah, and declaring his intent to return to Utah when he is released from military service.

¶ 3 In 2001, Father married Korilee Lilly (Mother). One child (Child) was born during the marriage. In April 2005, Mother attempted to file for divorce in Utah but could not because, at that time, she resided in California with Father and Child. Mother then filed for divorce in California, which was finalized in December 2006. The divorce decree included an order that Father pay Mother child support in the amount of $1000 every month. In June 2005—after filing for divorce but before the divorce was finalized—Mother and Child moved to Utah. Mother and Child have resided in Utah ever since.

¶ 4 In November 2007, Father filed a petition in Utah to modify the child support order to take into account Mother's increased income from employment she obtained after moving to Utah. In support of his petition, Father asserted that Utah has jurisdiction to modify the child support order because Utah is the resident state of Father, Mother, and Child. In September 2008, a commissioner recommended that Father's petition be de-

1. Because the relevant provisions are unchanged, we cite to the current version of the Utah Code as a convenience to the reader. *See* Utah Code Ann. §§ 78B–14–205, –613 amend. notes (2008) (stating that these sections were previously codified as Utah Code sections 78–45f–205 and 78–45f–613 before being renumbered in 2008).

2. Home of record is a military term for the place of a person's residence at the time he or she enlists into the military. This term, however, does not necessarily coincide with the concept of domicile or legal residence. *See* Rod Powers, *About.com*, Military Legal Residence and Home of Record, http://usmilitary.about.com/cs/militarylaw1/a/homeofrecord.htm (last visited February 17, 2011). *See also infra* ¶¶ 12–14 (explaining concept of legal residence or domicile).

nied. Father filed a timely objection, and in October 2008, the district court upheld the commissioner's recommendation and denied Father's petition for lack of subject matter jurisdiction. The district court concluded that Utah's jurisdiction to modify a child support order is determined by where "a parent physically lives" and reasoned that because "[Father] ... physically lives in California," California has jurisdiction to modify the child support order, and Utah "lacks subject-matter jurisdiction to ... modify [the] child support [order]." The district court based its decision on the fact that Father physically resides in California and made no findings regarding whether Utah is Father's domicile.

¶ 5 While Father's petition to modify was pending in Utah, Mother filed her own petition in California to modify the child support order. In December 2007—before any decision had been reached on Father's Utah petition to modify—the California court dismissed Mother's petition, essentially deferring the issue of which state had jurisdiction to the earlier-filed Utah petition, but explained that "[i]f Utah refuses to exert jurisdiction over the issue, ... either party may file a motion requesting modification of child support to be heard before this court." Before the Utah court had acted on the matter, however, Mother renewed her petition in California; and in September 2008—after the Utah commissioner recommended denial of Father's petition but before the district court acted on Father's objection—the California court granted Mother's petition to modify the child support order, raising Father's monthly obligation from $1000 to $1225. Father now appeals the district court's determination that Utah lacks subject matter jurisdiction to modify the child support order.[3]

## ISSUES AND STANDARDS OF REVIEW

 ¶ 6 This appeal presents two related issues for our review. First, Father challenges the district court's denial of his petition, arguing that Utah, and not California, has subject matter jurisdiction to modify the child support order because Utah is the resi-

dent state of Father, Mother, and Child. Father supports his position by arguing that Utah's subject matter jurisdiction to modify a child support order is based on a person's domicile or legal residence rather than physical residence. "Whether a [district] court has subject matter jurisdiction [to modify a child support order] presents a question of law which we review under a correction of error standard, giving no particular deference to the [district] court's determination." *Case v. Case*, 2004 UT App 423, ¶ 5, 103 P.3d 171 (internal quotation marks omitted). Second, Mother argues that this court must give full faith and credit to California's modified child support order. Whether a sister state's judgment must be given full faith and credit presents a question of law. *See In re Estate of Jones*, 858 P.2d 983, 985 (Utah 1993). Further, resolution of both of these issues requires statutory interpretation, which is a question of law, reviewed for correctness. *See State v. Yazzie*, 2009 UT 14, ¶ 6, 203 P.3d 984 ("[S]tatutory interpretation ... [is] review[ed] for correctness, affording no deference to a lower court's legal conclusions.").

## ANALYSIS

¶ 7 All the issues here involve the Uniform Interstate Family Support Act (UIFSA). UIFSA governs "the establishment, enforcement, [and] modification of support orders across state lines," and has been enacted in every state "to further national uniformity in the enforcement of child support orders." *Case*, 2004 UT App 423, ¶¶ 7–8, 103 P.3d 171 (internal quotation marks omitted). The purpose of UIFSA is "to recognize that only one valid support order may be effective at any one time." *Id.* ¶ 8 (internal quotation marks omitted).

¶ 8 Two particular provisions of UIFSA are relevant to our analysis, both of which govern when a state has subject matter jurisdiction to modify a child support order. These provisions as adopted in Utah and California are virtually identical. *Compare* Utah Code Ann. § 78B–14–205(1)(a) (2008), *with* Cal. Fam.Code § 4909(a)(1) (Deering

---

3. Father has not appealed the California court's modification of the child support order.

2010);[4] *and compare* Utah Code Ann. § 78B–14–613(1), *with* Cal. Fam.Code § 4962(a).[5] Because the Utah and California versions of these provisions are not materially different, as a convenience to the reader we will refer to them consistently throughout this opinion as UIFSA section 205 and UIFSA section 613. UIFSA section 205, which is codified as Utah Code section 78B–14–205 and California Family Code section 4909, governs under what circumstances a state that has issued a child support order may exercise continuing, exclusive jurisdiction to modify that child support order. It provides that a "state that has issued a child-support order . . . has and shall exercise continuing, exclusive jurisdiction to modify its child-support order . . . [if the issuing] state is the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued." Utah Code Ann. § 78B–14–205(1)(a); *accord* Cal. Fam.Code § 4909(a)(1). UIFSA section 613, which is codified as Utah Code section 78B–14–613 and California Family Code section 4962, governs when another state may obtain jurisdiction to modify the original child support order. It provides that "[i]f all of the parties who are individuals reside in [the other] state and the child does not reside in the issuing state, a tribunal of [the other] state has jurisdiction to enforce and to modify the issuing state's child support order." Utah Code Ann. § 78B–14–613(1); *accord* Cal. Fam.Code § 4962(a).

■ ¶ 9 As we have explained, this appeal presents two issues for our review: (1) whether Utah has subject matter jurisdiction

to modify the child support order and (2) whether California's modification of the child support order is entitled to full faith and credit. Ordinarily, a full faith and credit analysis is a threshold issue that must be considered before reaching any other issues raised on appeal. However, the issue of whether California's modified child support order is entitled to full faith and credit is resolved by determining whether California had subject matter jurisdiction to modify the child support order. *See infra* ¶¶ 24–26. And whether California had subject matter jurisdiction to modify the child support order is governed by UIFSA. *See infra* ¶ 26. Moreover, the central issue presented by this appeal is whether Utah or California has subject matter jurisdiction to modify the child support order under UIFSA. Thus, both issues raised on appeal require interpretation of UIFSA; and resolution of the full faith and credit issue will ultimately turn on resolution of the subject matter jurisdiction issue. Accordingly, for ease of analysis, we will first address the subject matter jurisdiction issue and will conduct the required analysis under UIFSA; we will then address the full faith and credit issue.

## I. Subject Matter Jurisdiction

¶ 10 The central issue presented for our review is whether Utah or California has subject matter jurisdiction under UIFSA to modify the child support order. Father asserts that the district court erred in denying his petition, arguing that Utah, and not California, has subject matter jurisdiction to modify the child support order. Father re-

---

4. Utah Code section 78B–14–205(1)(a) states,

 A tribunal of this state that has issued a child-support order consistent with the law of this state has and shall exercise continuing, exclusive jurisdiction to modify its child-support order if the order is the controlling order, and . . . at the time of the filing of a request for modification, this state is the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued.

 Utah Code Ann. § 78B–14–205(1)(a) (2008). In comparison, California Family Code section 4909(a)(1) states, "A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child support order . . . [a]s long as this state remains the residence of the obligor, the individ-

ual obligee, or the child for whose benefit the support order is issued." Cal. Fam.Code § 4909(a)(1) (Deering 2010).

5. Utah Code section 78B–14–613(1) states, "If all of the parties who are individuals reside in this state and the child does not reside in the issuing state, a tribunal of this state has jurisdiction to enforce and to modify the issuing state's child support order. . . ." Utah Code Ann. § 78B–14–613(1). California Family Code section 4962(a) states, "If all of the parties who are individuals reside in this state and the child does not reside in the issuing state, a tribunal of this state has jurisdiction to enforce and to modify the issuing state's child support order. . . ." Cal. Fam.Code § 4962(a).

lies on both UIFSA sections 205 and 613 in support of his position, arguing that under UIFSA section 613, Utah "has jurisdiction to ... modify [California's] child support order" because both Father and Mother "reside in ... [Utah] and ... [Child] does not reside in ... [California]," *see* Utah Code Ann. § 78B–14–613(1); *accord* Cal. Fam.Code § 4962(a), and under UIFSA section 205, California did not have "continuing, exclusive jurisdiction" to modify the child support order because California is no longer "the residence of" Father, Mother, or Child, *see* Utah Code Ann. § 78B–14–205(1)(a); *accord* Cal. Fam. Code § 4909(a)(1). It is uncontested that Mother and Child no longer reside in California and now reside in Utah. And Father asserts that he is also a Utah resident, arguing that the terms "residence" and "reside" as used in UIFSA sections 205 and 613 should be interpreted to mean a person's domicile or legal residence. In response, Mother argues—consistent with the district court's decision—that the terms "residence" and "reside" should be interpreted to mean physical residence. Mother thus asserts that California, and not Utah, has subject matter jurisdiction to modify the child support order because Father is a resident of California, as it is uncontested that Father physically resides in California. Accordingly, we must interpret the terms "residence" and "reside" as used in UIFSA sections 205 and 613 to determine whether subject matter jurisdiction to modify child support orders is based on legal residence—otherwise traditionally referred to as domicile—or physical residence.

¶ 11 The "primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain language, in light of the purpose the statute was meant to achieve." *State v. Burns*, 2000 UT 56, ¶ 25, 4 P.3d 795. "In interpreting statutory provisions ... [w]e look first to the plain language of the statute...." *Keene v. Bonser*, 2005 UT App 37, ¶ 10, 107 P.3d 693 (alteration in original) (internal quotation marks omitted). A plain language analysis is not limited to "individual words and subsections in isolation"; rather, statutory interpretation requires that each part or section "be construed in connection with every other part or section so as to produce a harmonious whole." *Anderson v. Bell*, 2010 UT 47, ¶ 9, 234 P.3d 1147 (emphasis omitted) (internal quotation marks omitted). Moreover, a statute's purpose is a factor in determining its plain meaning. *See id.* "Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations." *Keene*, 2005 UT App 37, ¶ 10, 107 P.3d 693 (internal quotation marks omitted).

¶ 12 The terms "residence" and "reside" are open to a diverse array of usages and interpretations. "The word resident has different shades of meaning, depending upon its context." *Government Emps. Ins. Co. v. Dennis*, 645 P.2d 672, 674 (Utah 1982). "Although the term is frequently found in statutes, contracts and other legal documents, it has no precise, technical, and fixed definition applicable in all contexts and to all cases." *Id.* "The term is flexible, elastic, slippery and somewhat ambiguous." *Id.* The term domicile is less protean. "Domicile is the most steadfast of words, and is pretty well anchored in legal literature so far as meaning is concerned. Residence, on the other hand, has an evasive way about it, with as many colors as Joseph's coat." *Id.* at 674 n. 1 (internal quotation marks omitted). *See generally Keene*, 2005 UT App 37, ¶ 11, 107 P.3d 693 (stating that the term "residence" has been "used and defined differently in a variety of Utah statutes and cases").

¶ 13 Thus, in exploring the meaning of the terms "resident" and "reside," it is important to recognize that a distinction of legal significance exists between the concepts of physical residence and legal residence or domicile. *See Keene*, 2005 UT App 37, ¶ 11, 107 P.3d 693. Physical "residence usually ... 'means bodily presence as an inhabitant in a given place,' while domicile usually 'requires bodily presence plus an intention to make the place one's home.'" *Id.* (quoting Black's Law Dictionary 1310 (7th ed. 1999)). Thus a person's physical residence is "[t]he place where one actually lives, as distinguished from a domicile," Black's Law Dictionary 1423 (9th ed. 2009), which is "[t]he place at which a person has been physically pres-

ent and that the person regards as home" or "a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere," *id.* at 558. A person may, therefore, have multiple physical residences at any one time but only one domicile or legal residence. *See Keene,* 2005 UT App 37, ¶ 11, 107 P.3d 693 (citing Black's Law Dictionary 1310 (7th ed. 1999)).

¶ 14 Ultimately, the terms "residence" or "reside" can be read to mean either domicile or physical residence. *See* Black's Law Dictionary 1423 (9th ed. 2009) (acknowledging that the terms "residence" and "domicile" are "[s]ometimes ... used synonymously"). Accordingly, our interpretation of these terms as used in UIFSA sections 205 and 613 will depend upon the meaning that best supports the purpose of UIFSA. *See Anderson,* 2010 UT 47, ¶ 9, 234 P.3d 1147 ("[T]he purpose of [a] statute has an influence on the plain meaning of a statute." (internal quotation marks omitted)); *Burns,* 2000 UT 56, ¶ 25, 4 P.3d 795 ("[The] primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain language, *in light of the purpose the statute was meant to achieve.*" (emphasis added)); *see also Government Emps.,* 645 P.2d at 674 (stating that the word "resident" has different meanings depending upon its contextual use); *Keene,* 2005 UT App 37, ¶ 11, 107 P.3d 693 (defining the term "residence" anew for purposes of the Cohabitant Abuse Act).

¶ 15 California has already had the opportunity to interpret the terms "residence" and "reside" as used in UIFSA sections 205 and 613 in *In re Marriage of Amezquita,* 101 Cal.App.4th 1415, 124 Cal.Rptr.2d 887 (2002)—a case factually similar to this one. In *Amezquita,* the state of New Mexico had issued a child support order in a divorce proceeding. *See id.* at 888. Subsequently, the mother and children moved to California and petitioned a California court to modify the child support order. *See id.* The father, who was an active duty member of the United States Air Force, was stationed in California and thus physically resided in California but nonetheless maintained a New Mexico domicile. *See id.* at 888, 890. The California

trial court concluded that it had jurisdiction to modify the child support order because the father's physical residence was in California. *See id.* at 888. The father appealed, contending—as Father does here—that under UIFSA sections 205 and 613, subject matter jurisdiction to modify a child support order is determined by domicile rather than physical residence. *See id.* at 888–89; *see also* Cal. Fam.Code §§ 4909(a)(1), 4962(a) (Deering 2010). Thus, the father argued that California did not have jurisdiction to modify the child support order because he was a domiciliary of New Mexico and not California. *See Amezquita,* 124 Cal.Rptr.2d at 888–89.

¶ 16 The California appellate court began its analysis by acknowledging that the purpose of UIFSA was "to ensure that ... only one valid support order may be effective at any one time." *Id.* at 890 (internal quotation marks omitted). The court also recognized the legal distinction between the concepts of residence and domicile, in that a person may have multiple physical residences but can only maintain one domicile at a time. *See id.* at 889. The court then read UIFSA sections 205 and 613 in conjunction, which together provide that a state that has issued a child support order has "continuing, exclusive jurisdiction" over that order so "long as [that] state remains the residence of" the father, the mother, or the children, *id.* at 890 (emphasis omitted) (internal quotation marks omitted); *see also* Cal. Fam.Code § 4909(a)(1), but another state may obtain jurisdiction to "modify [the] ... child support order if all the parties ... reside in [that other] state," *Amezquita,* 124 Cal.Rptr.2d at 889 (alteration and emphasis omitted) (internal quotation marks omitted); *see also* Cal. Fam.Code § 4962(a).

¶ 17 The California court interpreted these provisions in light of UIFSA's purpose to ensure that only one valid support order be in effect at any one time, and thus read these provisions as meaning that only one court at a time could have jurisdiction to modify a child support order. *See Amezquita,* 124 Cal.Rptr.2d at 890. The court reasoned that "the goal of ... UIFSA to prevent states from issuing conflicting support orders would be thwarted by a conclusion that a person

can maintain more than one residence." *Id.* The court further reasoned that "if [the issuing state's] jurisdiction is exclusive, then, by definition, [another state] does not have jurisdiction." *Id.* Thus, the court determined that under "UIFSA, it is assumed that a person cannot have more than one residence[, a premise that] does not comport with the more general definition of residence . . ., [which] allow[s] for multiple residences." *Id.* The court therefore concluded that the term "'residence,' for the purpose of . . . UIFSA, must mean 'domicile,' of which there can be only one." *Id.*[6]

¶ 18 We find the reasoning in *Amezquita* to be persuasive in interpreting our own substantially identical versions of UIFSA sections 205 and 613. Although the terms "residence" and "reside" are ambiguous in the sense that the words themselves can support two reasonable meanings—physical residence or domicile—*see generally Arnold v. Grigsby*, 2009 UT 88, ¶ 19, 225 P.3d 192 ("Statutory language is ambiguous if it can reasonably be understood to have more than one meaning." (internal quotation marks omitted)), this ambiguity is easily resolved when reading UIFSA sections 205 and 613 together and in light of the purpose of UIFSA, *see generally Anderson v. Bell*, 2010 UT 47, ¶ 9, 234 P.3d 1147 (providing that in interpreting a statute, the statute should be read as part of an entire statutory scheme "to produce a harmonious whole" (emphasis omitted) (internal quotation marks omitted)); *State v. Burns*, 2000 UT 56, ¶ 25, 4 P.3d 795 (providing that a statute should be interpreted "in light of the purpose the statute was meant to achieve"). As the *Amezquita* court and this court have acknowledged, "UIFSA is intended to recognize that only one valid support order may be effective at any one

time." *Case v. Case*, 2004 UT App 423, ¶ 8, 103 P.3d 171 (internal quotation marks omitted); *accord Amezquita*, 124 Cal.Rptr.2d at 890. That purpose is best served by interpreting the terms "residence" and "reside" as used in UIFSA sections 205 and 613 to base jurisdiction to modify a child support order on a person's domicile or legal residence rather than physical residence. To interpret these terms as meaning physical residence would potentially vest more than one state at a time with jurisdiction to modify a single child support order Such an interpretation could lead to competing modifications of child support orders—a troublesome result that clearly contravenes UIFSA's purpose to have only one valid support order in effect at a time. But interpreting the terms "residence" and "reside" to mean domicile ensures that the authority to modify a child support order is confined to one jurisdiction. This result best comports with the purpose of UIFSA and is accordingly the interpretation we adopt.[7]

¶ 19 An additional factor of importance in our reasoning here is the Utah Legislature's recognition that UIFSA is a "uniform act." Utah Code Ann. § 78B–14–901 (2008). Thus, "[i]n applying and construing it[s terms] consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." *Id.* Therefore, our interpretation of UIFSA's provisions must not be merely parochial but must be consonant with and supportive of UIFSA's overarching goal of promoting nationwide uniformity. On appeal, Father has cited several cases, including *Amezquita*, in which other state courts have come to the conclusion that UIFSA sections 205 and 613 are based on a parent's domicile rather than physical residence. *See Lattimore v. Lattimore*, 991 So.2d 239, 243 (Ala.Civ.App.2008)

---

6. Because *In re Marriage of Amezquita*, 101 Cal. App.4th 1415, 124 Cal.Rptr.2d 887 (2002), makes it clear that California has interpreted UIFSA sections 205 and 613 to be based on a person's domicile rather than physical residence, then under its own law, the California court did not have subject matter jurisdiction to modify the child support order in this case, if Father is a Utah domiciliary.

7. In the proceedings below, the concern was expressed that this interpretation of UIFSA

would permit a person seeking to modify a child support order to engage in forum shopping. Because it is usually more difficult for a person to change domicile than physical residence, however, the concern that a statutory focus on domicile would increase the temptation to forum shop seems misplaced. Under the facts of this case, for example, we are skeptical that a military service member could so easily change his domicile to take advantage of the perceived benefits of a more favorable jurisdiction.

(per curiam) (basing jurisdiction to modify a child support order under UIFSA upon a father's domicile rather than his physical residence); *In re Marriage of Amezquita,* 101 Cal.App.4th 1415, 124 Cal.Rptr.2d 887 (2002); *Kean v. Marshall,* 294 Ga.App. 459, 669 S.E.2d 463 (2008) (interpreting the term "reside" as used in UIFSA section 613 to mean a person's domicile rather than physical residence to support a conclusion that a father who was enlisted in the military and was stationed in Georgia maintained his Alabama domicile, thus, Georgia did not have subject matter jurisdiction to modify the Alabama-issued child support order); *Block v. Block,* 2005 WL 89472 at *3 n. 1, 2005 Minn.App. LEXIS 26 at *7 n. 1 (2005) (stating that because "UIFSA gives one state continuing exclusive jurisdiction over child-support matters," "[a]n individual ... cannot have more than one residence[; t]hus, [the term] 'residence' for purposes of ... UIFSA means domicile"); *Havlin v. Jamison,* 971 S.W.2d 938, 939–40 (Mo.Ct.App.1998) (basing application of UIFSA on a father's domicile rather than his physical residence). Although Mother has attempted to distinguish these cases, she has not cited any cases from other jurisdictions that offer a different interpretation of these provisions of UIFSA.

¶ 20 Having concluded that subject matter jurisdiction to modify a child support order under UIFSA sections 205 and 613 is based on a person's domicile, resolution of this case requires a determination of whether Father is a domiciliary of Utah or California. If Father is determined to be a Utah domiciliary, then Utah, and not California, has subject matter jurisdiction to modify the child support order. Conversely, if Father is determined to be a California domiciliary, then California, and not Utah, has subject matter jurisdiction to modify the child support order.

¶ 21 In dismissing Father's petition to modify the child support order, the district court made no findings regarding whether Father is a Utah domiciliary and, instead, based its decision solely on the fact that Father physically resides in California. In so doing, the district court suggested that, should this court reverse and remand its decision, an evidentiary hearing would be needed to determine Father's domicile. We agree and, accordingly, remand this case to the district court for an evidentiary hearing to determine Father's domicile. Although we leave this factual determination to the district court, we recognize that it is not, as the district court described, simply a "fiction" that a military service member serving outside the state for even extended periods of time may nevertheless maintain a domicile or legal residence in Utah. Rather, it is widely acknowledged that military service members can maintain a domicile in a place where they do not physically reside despite a lengthy absence from that place of domicile. *See generally* 25 Am.Jur.2d Domicil § 28 ("Generally, an adult does not gain or lose a domicil[e] or residence by serving in the military. Thus, ... a person does not acquire a new domicil[e] by entering the military and does not abandon or lose the domicil[e] that he or she had upon entering." (footnote omitted)); 21 A.L.R.2d 1180 § 13 ("Practically all of the authorities are in agreement that a person inducted into the military service retains his domicile or residence in the state from which he entered the military service ... until such time as he effectively abandons it and establishes a new one elsewhere."); *see also Lattimore,* 991 So.2d at 244 (stating that "a person who is inducted into military service retains residence in the state from which he is inducted until a new residence is established or the initial residence is abandoned" (internal quotation marks omitted)); *Amezquita,* 124 Cal.Rptr.2d at 890 (concluding that the father remained a New Mexico domiciliary despite his lengthy presence in California due to military assignment because he retained a New Mexico driver license, voted and paid taxes there, and intended to return to New Mexico once his military service was complete); *Kean,* 669 S.E.2d at 465 (stating that "[a] person's domicile is not changed merely by his enlistment in the army, and his transfer or assignment by military order to another jurisdiction" (alteration in original)); *Teague v. Third Jud. Dist.,* 4 Utah 2d 147, 289 P.2d 331, 333 (1955) (stating that a court may take "judicial notice of the fact that a soldier is subject to transfer at any time and that his presence in

any one place will probably be temporary"). The district court must therefore determine whether Father is a domiciliary of Utah or California in order to ultimately decide whether Utah has subject matter jurisdiction to modify the child support order.

¶ 22 Having concluded that, under UIFSA, subject matter jurisdiction to modify a child support order is determined by a person's domicile rather than physical residence, we now address the full faith and credit issue to determine whether further proceedings in this case have been precluded by a valid, supervening modified child support order issued by the California court.

## II. Full Faith and Credit

 ¶ 23 Mother argues that this court must recognize California's modification of the child support order under the Full Faith and Credit Clause, see U.S. Const. art. IV, § 1, as interpreted by Utah law. Father, however, has brought to our attention the Full Faith and Credit for Child Support Orders Act (the FFCCSOA), which specifically addresses when one state must give full faith and credit to a child support order issued by another state.[8] See generally 28 U.S.C.S. § 1738B (LexisNexis 2010). We will address the full faith and credit issue under both the FFCCSOA and the Full Faith and Credit Clause in turn. But because both analyses are similar and result in identical conclusions, we need not decide which is controlling.

¶ 24 The FFCCSOA mandates that "each State ... shall enforce ... a child support order made consistently with this section by a court of another State." 28 U.S.C.S. § 1738B(a)(1). To be "made consistently with" the FFCCSOA, a state issuing a child support order must have "subject matter jurisdiction to hear the matter and enter such an order," and must also have "personal jurisdiction over the contestants." 28 U.S.C.S. § 1738B(c)(1); see also United States v. Big-

ford, 365 F.3d 859, 865 n. 2 (10th Cir.2004) (stating that the FFCCSOA "expressly provides that a state need not enforce a child support order rendered by another state unless it was rendered with both subject matter and personal jurisdiction"). Further, a state that has issued a child support order "has continuing, exclusive jurisdiction over the order if th[at s]tate is the child's ... residence" or is "the residence of any individual contestant." 28 U.S.C.S. § 1738B(d); see also 28 U.S.C.S. § 1738B(b) (defining "contestant"). A court of another state may modify a child support order, however, if the issuing state "no longer has continuing, exclusive jurisdiction o[ver] the child support order because that [s]tate [is] no longer ... the child's ... residence" and is no longer "the residence of any individual contestant." 28 U.S.C.S. § 1738B(e)(2)(A). Thus, under the FFCCSOA, California's modified child support order is only entitled to full faith and credit if California retained continuing, exclusive jurisdiction to modify the child support order.

 ¶ 25 Pursuant to the Full Faith and Credit Clause of the United States Constitution, a state must give full faith and credit to the judgments of other states. See U.S. Const. art. IV, § 1. But to be given full faith and credit, these foreign judgments must be both valid and final. See In re Estate of Jones, 858 P.2d 983, 985 (Utah 1993). "To be 'valid' for purposes of full faith and credit, a judgment must have been rendered by a court with competent jurisdiction...." Id. "A foreign judgment rendered without subject matter jurisdiction or [personal] jurisdiction over ... the parties ... is not entitled to full faith and credit." Id. Thus, under the Full Faith and Credit Clause, if California did not have jurisdiction to modify the child support order, the order is not valid and is not entitled to full faith and credit.

---

8. The FFCCSOA "was enacted by the United States Congress to facilitate enforcement of child support orders among the states, to discourage interstate controversies over child support, and to avoid jurisdictional competition and conflict among the states in the establishment of child support." 18 A.L.R. 6th 97 (summary); see also 28 U.S.C.S. § 1738B congressional findings, statement of policy, and declaration of purposes (LexisNexis 2010). The FFCCSOA became law following Congress's mandate that the states adopt UIFSA and was, from its inception, intended to be consistent with UIFSA. See Basileh v. Alghusain, 912 N.E.2d 814, 819–20 (Ind.2009) (explaining the relationship between the FFCCSOA and UIFSA).

¶ 26 Whether applying the FFCCSOA or the Full Faith and Credit Clause, the analysis is the same: both require that for California's modified child support order to be entitled to full faith and credit, California must have had subject matter jurisdiction—or, stated differently, continuing, exclusive jurisdiction—to modify the child support order. *See* 28 U.S.C.S. § 1738B(c), (d), (e); *Jones,* 858 P.2d at 985. Further, under both approaches, whether California had jurisdiction to modify the child support order is ultimately determined by UIFSA section 205. Under the FFCCSOA, the requirement that must be met for California's modified order to be given full faith and credit is identical to UIFSA section 205: both require that California must have retained continuing, exclusive jurisdiction to modify the child support order. *Compare* 28 U.S.C.S. § 1738B(d), (c), *with* Utah Code Ann. § 78B–14–205(1)(a) (2008), *and* Cal. Fam.Code § 4909(a)(1) (Deering 2010). *See also Basileh v. Alghusain,* 912 N.E.2d 814, 820 (Ind.2009) (concluding that the FFCCSOA was not intended to preempt UIFSA but, rather, was intended to follow its contours). Similarly, under the Full Faith and Credit Clause, whether California had subject matter jurisdiction to modify the child support order is determined by UIFSA section 205, which governs when a state has subject matter jurisdiction to modify a child support order. *See* Utah Code Ann. § 78B–14–205(1)(a); Cal. Fam.Code § 4909(a)(1). Thus, these full faith and credit analyses are essentially the same regardless of which approach is taken because resolution of this issue is ultimately governed by UIFSA section 205.

¶ 27 Under UIFSA section 205, whether California had subject matter jurisdiction—or continuing, exclusive jurisdiction—to modify the child support order turns on interpretation of the term "residence" as used in that provision—the exact analysis we have conducted here, concluding that the term "residence" as used in UIFSA section 205 means a person's domicile or legal residence rather than physical residence. *See supra* ¶ 18. Therefore, resolution of whether California had subject matter jurisdiction to modify the child support order—thus entitling that order to full faith and credit—is contingent upon whether, on remand, the district court determines Father to be a domiciliary of Utah or of California. If it is determined that Father is a Utah domiciliary, then not only does Utah have jurisdiction to modify the child support order, but California also did not have jurisdiction to modify the child support order; thus, that modified order is not entitled to full faith and credit under either the FFCCSOA or the Full Faith and Credit Clause. Conversely, if it is determined that Father is a California domiciliary, then not only does Utah not have jurisdiction to modify the child support order, but California did have jurisdiction to modify the child support and that modified order is entitled to full faith and credit under both the FFCCSOA and the Full Faith and Credit Clause. Therefore, the full faith and credit issue will necessarily be resolved on remand.

¶ 28 As a final matter, however, we must address one other component of the full faith and credit analysis under Utah's interpretation of the Full Faith and Credit Clause: whether the California court itself decided that it had jurisdiction to modify the child support order, thus conclusively resolving the jurisdiction question under the doctrine of res judicata. *See generally Fullenwider Co. v. Patterson,* 611 P.2d 387, 389 (Utah 1980). If the " 'jurisdiction of [a] foreign court was raised and adjudicated [before that foreign court], then the determination of that issue becomes res judicata.' " *Paffel v. Paffel,* 732 P.2d 96, 99 (Utah 1986) (quoting *Fullenwider,* 611 P.2d at 389). "The critical inquiry" is therefore "whether the issue of jurisdiction was full[y] and fairly litigated and finally decided in the court which rendered the [competing] judgment." *Fullenwider,* 611 P.2d at 389. In conducting such an analysis, a distinction must be recognized "between the mere assumption of jurisdiction by the foreign court and a recital to that effect, as contrasted [with] an express adjudication on the subject after the issue has been raised." *Id.*

¶ 29 We conclude that the issue of California's subject matter jurisdiction to modify the child support order is not barred by res judicata because, although raised before the California court, the issue of subject matter

jurisdiction was not adjudicated. At a hearing before the California court, Father asserted that California did not have subject matter jurisdiction to modify the child support order. Father's objection was based on UIFSA section 205, which provides that California, having issued the child support order, "shall exercise continuing, exclusive jurisdiction to modify its child-support order if … [California] is the residence of" Father, Mother, or Child. *See* Utah Code Ann. § 78B–14–205(1)(a); *accord* Cal. Fam.Code § 4909(a)(1). Thus, Father specifically "challeng[ed] the jurisdiction of [the California] court under continuing exclusive jurisdiction, saying that [the California] court does not have the ability to modify [the child support order because M]other lives [in Utah] and [Father is] only in California for military purposes." In response to Father's argument, the California court considered only whether it had *personal jurisdiction* over Father because he had entered a general rather than special appearance but never addressed whether it had *subject matter jurisdiction* to modify the child support order. Because the issue of subject matter jurisdiction was not adjudicated by the California court, we are not barred by res judicata from considering whether California had jurisdiction to modify the child support order, *see Paffel*, 732 P.2d at 99.[9]

¶ 30 Our analysis, therefore, stands. And whether California had jurisdiction to modify the child support order, thus entitling that order to full faith and credit under both the

FFCCSOA and the Full Faith and Credit Clause, is contingent upon the district court's determination of whether Father is a Utah or California domiciliary.

## CONCLUSION

¶ 31 We conclude that the district court erroneously dismissed Father's motion to modify the child support order because subject matter jurisdiction to modify a child support order under UIFSA sections 205 and 613 is determined by a person's domicile or legal residence rather than physical residence. We therefore reverse and remand for an evidentiary hearing to determine Father's domicile. If Father is determined to be a Utah domiciliary, then Utah, and not California, has subject matter jurisdiction to modify the child support order. We further conclude that if Father is determined to be a Utah domiciliary, then not only does Utah have subject matter jurisdiction to modify the child support order but California's modification of the child support order is not entitled to full faith and credit under either the FFCCSOA or the Full Faith and Credit Clause as interpreted by Utah law.[10] Furthermore, under Utah law, the issue of whether California had subject matter jurisdiction to modify the child support order is not barred by res judicata because although the issue was raised before the California court, it was not adjudicated.

¶ 32 We therefore reverse and remand.[11]

---

9. It is worth noting that when Mother first petitioned to have California modify the child support order, the California court dismissed Mother's petition, explaining that "[i]f Utah refuses to exert jurisdiction over the issue, … either party may file [a] motion [requesting modification of the child support order] to be heard before this court." California, therefore, deferred to Utah's decision on whether it would exercise subject matter jurisdiction to modify the child support order. And being subject to appellate review, the issue of whether Utah will exercise subject matter jurisdiction to modify the child support order has not yet been finally decided. Why the California court decided to go forward with Mother's renewed modification proceeding before a Utah court had determined whether it had jurisdiction is not discernible from the record before us.

10. Our conclusion here further complies with UIFSA and the FFCCSOA, which both provide

methods for determining which child support order is controlling when multiple child support orders are issued by multiple states. *Compare* Utah Code Ann. § 78B–14–207(2) (2008), *with* 28 U.S.C.S. § 1738B(f) (LexisNexis 2010). Specifically, both UIFSA and the FFCCSOA provide that if two competing child support orders are issued by two different states, then the order issued by the state with continuing, exclusive jurisdiction is the controlling child support order. *Compare* Utah Code Ann. § 78B–14–207(2)(a), *with* 28 U.S.C.S. § 1738B(f)(2).

11. In dismissing Father's petition to modify the child support order, the district court awarded Mother attorney fees as the prevailing party. *See generally* Utah Code Ann. § 30–3–3(2) (Supp. 2010) (providing for reasonable attorney fees to the prevailing party in child support actions); Utah Code Ann. § 78B–14–313(2) (2008) (providing for reasonable attorney fees under UIFSA).

¶ 33 WE CONCUR: GREGORY K. ORME and MICHELE M. CHRISTIANSEN, Judges.

Because we reverse the district court's dismissal of Father's petition to modify the child support order, we similarly reverse the district court's award of attorney fees to Mother and deny her request for attorney fees on appeal. *See generally Leppert v. Leppert,* 2009 UT App 10, ¶ 29, 200 P.3d 223 (providing that a party who was awarded attorney fees as the prevailing party by the trial court is entitled to attorney fees on appeal only if he or she was also the prevailing party on appeal).